**Donna J. SCHMIEGE et al.,
Plaintiffs-Appellees,**

v.

**SECRETARY OF AGRICULTURE OF THE UNITED STATES, et al.,
Defendant-Appellant.**

No. 82–1985.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1982.

Decided Nov. 22, 1982.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., James M. Rosenbaum, U.S. Atty., Minneapolis, Minn., Leonard Schaitman, Nicholas S. Zeppos, Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellant, John Block.

Ann C. Cofell, Mid-Minnesota Legal Assistance, St. Cloud, Minn., Eric Janus, Minneapolis, Minn., for plaintiffs-appellees.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and DUMBAULD,* Senior District Judge.

PER CURIAM.

This appeal involved the method to be employed by the Secretary of Agriculture in computing food stamp benefits. The appellees' benefits would be reduced by the Secretary's method of computation. Counsel for the Secretary requested a speedy disposition of the case so that by December 1 payments may be put into effect in accordance with this Court's determination.

Accordingly, we affirm the order of the District Court, and set forth the following concise statement of our reasons for so holding.

---

* The Hon. Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

The Food Stamp program has been in effect since 1964 to enable "low-income households to purchase a nutritionally adequate diet." 7 U.S.C. § 2011. In 1980 Congress passed the Home Energy Assistance Act (as Title III of the Crude Oil Windfall Profit Tax Act of April 2, 1980, 94 Stat. 229, 42 U.S.C. § 8621 *et seq.*) to assist low income families to meet the rising costs of energy for home use.

The framers of the energy legislation intended that food stamp benefits should not be diminished by reason of energy payments (even when paid directly to the energy supplier). The Conference Report accompanying the Act of April 2, 1980, explained:

6. The conference agreement requires that fuel assistance payments or allowances provided under this title will not be considered income or resources of an eligible household for any purpose under a Federal or State law. The conferees wish to emphasize that this provision applies regardless of whether the fuel assistance is paid directly to the household or to the supplier of energy to the household. Thus, under any law, such as the Food Stamp Act of 1977, which provides that benefits may depend on the expenditures of the household for fuel, any portion of these expenditures which may be paid by the fuel assistance program authorized in this conference agreement will not be considered a resource available to this household even if the payment is made directly to the energy supplier. *Thus, under such a law, benefits will be computed as if the total cost of the fuel, including the amount of assistance provided, had been paid by the household.*

H.R.Conf.Rep.No. 96–817, 96th Congressional and Administrative News, III, 410, 705–706, (Italics supplied).

The language of the statute intended to effectuate this intention [42 U.S.C. § 8624(f) ] reads:

Notwithstanding any other provision of law the amount of any home energy assistance payments or allowances provided to an eligible household under this subchapter shall not be considered income or resources of such household (or any member thereof) for any purpose under any Federal or State law, including any law relating to taxation, food stamps, public assistance, or welfare programs.[1]

Based upon the appearance of the words "income or resources" in that provision, the Secretary constructs a plausible parallel to income tax law distinguishing that phrase from "deductions." The Secretary contends that since energy expenses are not counted as income but merely disallowed as deductions, he is not contravening the policy established by Congress. But the bottom line controlling the amount of benefits is the same whether income is increased or deductions decreased.[2] In either case the recipient's grant is diminished, contrary to the intent of Congress.

Hence, while the Secretary's method of calculation might be regarded as technical compliance with the wording of the statute because the energy assistance payment is not treated as "income," nevertheless the Secretary effectively succeeds in diminishing the food stamp recipient's benefits by eliminating the "deduction" of energy expenses as a part of shelter costs allowed under 7 U.S.C.A. § 2014(e) in determining eligibility for and the amount of food stamp benefits.

This method of calculation clearly contradicts the intention of the framers of the energy assistance legislation as set forth above in the quotation from the Conference Report. The order of the District Court requiring inclusion of energy expenses paid directly to the supplier in the excess shelter cost deduction in computing food stamp eli-

---

1. This provision, found in the Act of August 13, 1981, 95 Stat. 896, re-enacts a substantially identical provision in the Act of April 2, 1980, 94 Stat. 299, 42 U.S.C. § 8612(c).

2. One is reminded of Chief Justice Taft's comment in *Adkins v. Children's Hospital,* 261 U.S. 525, 564, 43 S.Ct. 394, 403, 67 L.Ed. 785 (1923), rejecting a distinction between minimum wage and maximum hour legislation, that "One is the multiplier and the other the multiplicand."

gibility and the allotment to which recipients are entitled is

Affirmed.

**UNITED STATES of America, Appellee,**

v.

**Joseph HERNDON, Appellant.**

**No. 82–1640.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 18, 1982.

Decided Nov. 22, 1982.

Rehearing Denied Dec. 14, 1982.

Ann Lemp, Wolff & Frankel, Clayton, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., James E. Crowe, Jr., Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Joseph Herndon was indicted by a grand jury on conspiracy to make counterfeit money, 18 U.S.C. §§ 371, 471, and was found guilty by a jury. Appellant was sentenced to two years imprisonment. He appeals the conviction, arguing (1) the indictment should be dismissed and (2) the district court[1] erred in refusing to give a requested instruction. We affirm.

Herndon first argues that there is a "complete absence of competent evidence to support an indictment" and argues that this requires its dismissal.[2] This argument is

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

2. The primary evidence presented to the grand jury was the testimony of FBI agent William

Noonan concerning his investigation and cover-

without merit. Even assuming that only hearsay was presented to the grand jury, the indictment is valid. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Neff,* 525 F.2d 361, 363 (8th Cir.1975). In *Costello,* the Supreme Court expressly held that an indictment based solely on the testimony of three government agents concerning events which they investigated but of which they had no personal knowledge was adequate. 350 U.S. at 359; *see United States v. Boykin,* 679 F.2d 1240 (8th Cir.1982).

Nor has Herndon made a showing of prosecutorial misconduct. *See United States v. Samango,* 607 F.2d 877, 881 (9th Cir.1979). Herndon's claim that the assistant United States Attorney failed to inform the grand jury that one of the witnesses against Herndon was a heroin addict, even if factually supported, does not provide a basis for an attack on an indictment. *United States v. Boykin,* 679 F.2d at 1249.

■ Herndon requested that the following jury instruction be given:

> The testimony of a co-conspirator who provides evidence against a defendant for immunity from punishment for other crimes, or for personal advantage must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the co-conspirator testimony has been affected by interest, or by prejudice against defendant.

The district court refused to give the requested instruction, but did give the following instruction requested by the government:

> The testimony of a co-conspirator who provides evidence against a defendant for personal advantage must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine

whether the testimony by such a co-conspirator has been affected by interest, or by prejudice against defendant.

The only difference between the two instructions is the inclusion in the defense version of a cautionary statement regarding testimony of a co-conspirator who provides testimony in exchange for immunity from punishment for other crimes.

The key witness against Herndon was his co-conspirator and brother-in-law, Clyde Dickerson. Dickerson testified that he and Herndon agreed to print counterfeit bills on a printing press in Herndon's basement and to distribute those bills. Dickerson testified that he had pled guilty to one count of conspiracy and one count of passing counterfeit money and that the government informally agreed to drop other charges in exchange for his truthful testimony against Herndon. Dickerson was cross-examined about this agreement. In addition to the instruction above, the district court gave a general credibility instruction, 1 E. Devitt & C. Blackmar, Federal Jury Practice & Instructions § 17.01 (3d ed. 1977), an instruction regarding prior inconsistent statements, *id.* § 17.08, and an instruction cautioning the jury to weigh the testimony of co-conspirators with great care, *id.* § 17.06.

This is not a case in which the district court refused to give any cautionary instruction on witness credibility. *Cf. People v. Dela Rosa,* 644 F.2d 1257 (9th Cir.1980) (per curiam) (refusal to give requested informant and other instructions held reversible error). In the present case the credibility of witnesses was a focal point of the instructions. Considering the instructions as a whole, *United States v. Shigemura,* 682 F.2d 699, 704 (8th Cir.1982), we find that Herndon's interests were adequately protected. *United States v. Riddick,* 519 F.2d 645, 648 (8th Cir.1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976).[3]

---

ing statements made by witnesses who did not appear before the grand jury.