**Linda CLIFFORD; Melvina Lesmeister and Pam Jones, on behalf of themselves and all others similarly situated, Appellees,**

v.

**William JANKLOW, Governor of the State of South Dakota, and James Ellenbecker, Secretary of South Dakota Department of Social Services, and the Agents, Employees and Successors of the above, Appellants.**

No. 84–1149.

United States Court of Appeals, Eighth Circuit.

Submitted April 5, 1984.

Decided May 2, 1984.

Mark V. Meierhenry, Atty. Gen., Janice Godtland, Asst. Atty. Gen., Dept. of Social Services, Pierre, S.D., for appellants.

Black Hills Legal Services, Inc. by Mark Falk, Stephen C. Hoffman, Rapid City, S.D., for appellees.

Before HEANEY, ROSS and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

Once again we are called upon to determine whether the State of South Dakota's method of distributing federal funds through its Low Income Energy Assistance Program (LIEAP) violates the Low-Income Home Energy Assistance Act of 1981 (LIHEAA), 42 U.S.C. §§ 8621–8629 (Supp. V 1981). In *Crawford v. Janklow*, 710 F.2d 1321, 1324 (8th Cir.1983), we affirmed the district court's injunction against the categorical exclusion of subsidized housing residents from South Dakota's LIEAP. For the 1983–84 heating season, the state devised a distribution plan which categorizes subsidized housing residents as "partially vulnerable" to heating costs and reduces their LIEAP grant accordingly. The district court [1] held this differential treatment of subsidized housing residents violated provisions of the LIHEAA and the equal protection clause. The court ordered the state to pay the same level of benefits to subsidized housing residents as it pays to similarly situated applicants who do not reside in subsidized housing. We affirm.

---

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

## BACKGROUND

Congress has been providing energy assistance to low income households since 1980. The original Home Energy Assistance Act of 1980 was contained in the Windfall Profit Tax legislation. 42 U.S.C. §§ 8601–8612 (Supp. IV 1980). The stated purpose of that Act was to help low income households meet the rising costs of home energy. In 1981, Congress repealed the 1980 Act as part of the Omnibus Budget Reconciliation Act and replaced it with a fiscally trimmer version, the LIHEAA, which removed many of the federal regulations that had controlled the distribution of federal energy assistance funds. South Dakota has received block grants under the LIHEAA for the past several years.

For the fiscal year 1983, the state initially categorically excluded people living in subsidized housing from the state LIEAP. The district court struck down the categorical exclusion in Crawford v. Janklow, 557 F.Supp. 1146 (D.S.D.1983), aff'd, 710 F.2d 1321 (8th Cir.1983). The state then devised a "revised plan" for distributing the funds remaining for that year. This revised 1983 plan is similar to the 1984 plan at issue in this case. Both plans involve calculations which result in at most partial LIEAP payments for subsidized housing residents. On August 17, 1983, the district court denied the plaintiffs' objections to the 1983 plan in an order indicating it had no jurisdiction. The plaintiffs appealed and we remanded that case in a separate order filed in conjunction with this opinion, Crawford v. Janklow, 733 F.2d 541 (8th Cir.1984).

The focus of this appeal is South Dakota's LIEAP for the 1984 fiscal year. The 1984 program divides applicants into two classes: those who reside in subsidized housing and those who do not. The state determines the LIEAP benefit level for applicants who do not reside in subsidized housing by applying a "payment matrix" which takes into account income level, region of the state, and type of fuel. The matrix is designed so that a household with an income under $7,500 can receive seventy percent of its estimated heating costs; a household with an income over $7,500 and under $9,800 can receive sixty percent of its estimated heating costs; a household with an income over $9,800 and under $12,800 can receive fifty percent of its estimated heating costs; and a household with an income over $12,800 can receive forty percent of its estimated heating costs.[2] The state's plan designates these applicants as "fully vulnerable" to heating costs and they do not need to prove actual heating expenses.[3]

The state's plan designates residents of subsidized or public housing as "partially vulnerable" to heating costs because their shelter subsidies take into account heating expenses. The district court focused on housing subsidized under 42 U.S.C. § 1437f (1976 & Supp. V 1981) (as amended), or "Section 8" housing, as illustrative. Section 8 residents pay up to thirty percent of their adjusted gross income for shelter costs including rent, electricity, heat, water and trash collection. The administering agency must figure average utility costs per subsidized unit in order to determine the total shelter costs for a subsidized household. These estimated utility costs, or "utility allowances," are not payments made to the Section 8 housing resident. Rather, the utility allowance, plus the contract rent, minus the family's contribution

---

**2.** Apparently the only relevance of family size under the state's plan is to determine eligibility for those applicants with incomes above $7,500. Thus, a single person and a family of five with incomes of less than $7,500 who live in the same region of the state and use the same type of fuel would receive the same LIEAP grant. A single person making $8,000 is not eligible for any LIEAP assistance, but the family of five would receive sixty percent of their estimated heating costs.

**3.** S.D.Admin.R. 67:15:01:09 (1983) requires an applicant to submit proof of liability for heating expenses in the form of a bill from an energy supplier or a statement from a landlord indicating what portion of the applicant's rent covers heat. Once liability is established, actual heating expenses are irrelevant.

totals the government's subsidy on any given subsidized housing unit. In cases where the family pays utility costs to an outside supplier, that payment is deducted from their family contribution to assure they do not pay over thirty percent of their income for shelter. *See* U.S. Department of Housing and Urban Development Handbook 7420.7 §§ 11–1—11–2 (1980) (incorporated by reference in the affidavit of Darlys Baum).

To determine a Section 8 housing resident's level of LIEAP benefits, the 1984 program isolates the amount designated for heat in the monthly utility allowance and multiplies that amount by twelve to arrive at a total heat allowance for the year. If this total exceeds the LIEAP benefit level for a similarly situated household, the Section 8 household is not entitled to LIEAP benefits. Ineligibility for LIEAP funds also makes the household ineligible for Energy Crisis Intervention Program funds. If the yearly Section 8 heating allowance is less than the LIEAP benefit level for a similarly situated household, the Section 8 household is entitled to the difference.

On December 7, 1983, South Dakota subsidized housing residents filed a class action challenging the state's 1984 LIEAP. The district court certified the class on December 23, 1983, and held a trial on the merits on January 10 and 11, 1984. The court expedited disposition of the case because the plaintiffs were seeking funds for the current heating season. By an order dated January 16, 1984, the court held the current LIEAP violated the LIHEAA provisions, 42 U.S.C. §§ 8624(b)(5), 8624(b)(8) & 8624(f), and denied the plaintiff class equal protection. The court ordered the state to make full LIEAP payments to all class members who had applied for benefits in the current season. The state filed a motion for a stay in the district court on January 24, 1984. That court denied the stay on January 27, 1984. The state subsequently applied to this Court for a stay of the district court's order which was denied on February 9, 1984. *This appeal followed.*

## DISCUSSION

We will not reach the constitutional issues raised by this appeal because the statutory grounds relied on by the district court are a sufficient basis for affirming its order. *See Blum v. Bacon,* 457 U.S. 132, 137–138, 102 S.Ct. 2355, 2359–2360, 72 L.Ed.2d 728 (1982); *Crawford v. Janklow, supra,* 710 F.2d at 1324. Although the state's revised plan has a surface appeal of rationality, we agree that it runs contrary to certain provisions of the LIHEAA. The district court found the state's LIEAP violated section 8624(b)(8) as well as sections 8624(f) and 8624(b)(5); we find it sufficient to affirm on our reading of these latter two sections.

### A. 42 U.S.C. § 8624(f)

■ The district court held the state's plan violated section 8624(f) of the LIHEAA. That section provides:

**(f) Payments or assistance not to be deemed income or resources for any purpose under Federal or State Law**

Notwithstanding any other provision of law, the amount of any home energy assistance payments or allowances provided to an eligible household under this subchapter shall not be considered income or resources of such household (or any member thereof) for any purpose under any Federal or State law, including any law relating to taxation, food stamps, public assistance, or welfare programs.

42 U.S.C. § 8624(f) (Supp. V 1981).

This provision clearly prohibits the states from reducing a household's entitlement to other forms of public assistance based on its receipt of LIHEAA funds. *See Schmiege v. Secretary of Agriculture,* 693 F.2d 55, 56 (8th Cir.1982) (per curiam). The question presented here is whether the provision also evinces Congress's intent to prevent the states from achieving the same net effect by the opposite method, that is, reducing the LIHEAA grant based on the applicant's receipt of other forms of public assistance.

The LIHEAA specifically targets public assistance recipients as well as low income families for energy assistance. Section 8624(b)(2)(A) directs the states to make payments to households receiving: aid to families with dependent children (AFDC), supplemental security income (SSI), food stamps, and other veterans and survivor pension programs. All of these programs in some form or another take into account shelter costs because they are subsistence programs, designed to meet only the recipient's basic needs. Thus, for example, in South Dakota an AFDC family may receive a $163 maximum monthly shelter allowance. Of that amount, $120 is designated for rent and $43 is designated for utilities. Twenty-nine dollars of the utility allowance is the standard allowance for heat. S.D. Admin.R. 67:12:06:12(3) (1983). Multiplying this "heat allowance" by twelve yields an annual heat subsidy of $348. Like the Section 8 heating allowances, the AFDC heating subsidy is susceptible to being labeled as duplicative of payments made under the LIHEAA.

That Congress targeted AFDC recipients as categorically eligible for LIHEAA funds despite the provision for energy assistance in the help they were already receiving evinces Congress's intent to provide the LIHEAA funds as energy assistance over and above what the recipient might already be receiving from other government sources. This aim was clearly articulated in the prior version of the Act which recognized the recent rises in the cost of home energy and that "assistance to households in meeting the burden of rising energy costs is insufficient from existing State and Federal sources." 42 U.S.C. § 8601(a)(1) & (8) (Supp. IV 1980) (repealed 1981). Although this purpose statement was not included in the revised Act, we think it provides a clue as to Congress's intent in enacting a substantially similar statute.

The state concedes that section 8624(f) prohibits it from using a Section 8 family's LIEAP grant to reduce the amount of shelter allowance they may receive under Section 8. Yet, the state claims it may achieve the same net effect by reducing the LIEAP grant instead of the Section 8 allowance. In *Schmiege v. Secretary of Agriculture, supra,* 693 F.2d at 56, we rejected a method of computing food stamp benefits which technically complied with the wording of section 8624(f), but contradicted the intent behind the provision. The Secretary of Agriculture argued in *Schmiege* that it was permissible to disallow fuel expenses in calculating food stamp benefits for families receiving LIHEAA funds because those funds were not being considered a resource; rather, an expense was being disallowed. Although this case is distinguishable because the state is reducing an applicant's entitlement to the LIHEAA benefits rather than some other form of public assistance, we think the *Schmiege* principle is applicable. We see no logical reason why it should be permissible for a state to achieve a net effect contrary to Congress's intent merely by subtracting from one side of an equation instead of the other.

Although section 8624(f) standing alone convinces us that the state's method of computing LIEAP benefits for subsidized housing residents runs contrary to the LIHEAA, section 8624(b)(5) equally supports our decision that the method is invalid.

**B. 42 U.S.C. § 8624(b)(5)**

■ Section 8624(b)(5) was the basis for our ruling against the state's categorical exclusion of subsidized housing residents in *Crawford v. Janklow, supra,* 710 F.2d at 1327. Section 8624(b)(5) requires states to provide "the highest level of assistance * ! * to those households which have the lowest incomes and the highest energy costs in relation to income, taking into account family size." 42 U.S.C. § 8624(b)(5) (Supp. V 1981). In *Crawford,* we interpreted this section to mean that "if the states wish to narrow the number of persons eligible for assistance, they must exclude persons from the top of the class described by Congress, in terms of income and proportionate energy costs, rather than from the bottom." *Crawford v. Janklow, supra,* 710 F.2d at 1327 (citing S.Rep. No. 97–139, 97th Cong., 1st Sess. 909–910, *re-*

*printed in* 1981 U.S.Code Cong. & Ad.News 396, 933–934).

The question presented in this case is different than the one we confronted in *Crawford* in that the state has reduced the benefit levels for subsidized housing residents—sometimes down to zero—instead of categorically excluding them from the program. As in *Crawford,* our duty is to judge the state's plan against a common sense reading of the statute. Section 8624(b)(5) restricts the state's discretion in fixing benefit levels for a certain class of applicants. It requires the state to give the highest level of benefits to applicants with (1) the lowest incomes and (2) the highest energy costs in relation to income.

The district court first found that members of the plaintiff class were among the poorest of the poor in the state:

> Of the 1,089 class members who, by January 4, 1984, had applied for LIEAP benefits in fiscal year 1984, 10.3% had income less than $2,000.00 per year; 49.6% had income less than $4,000.00 per year; 75.6% had income less than $6,000.00 per year and 85% had income less than $7,500.00 per year.

*Clifford v. Janklow,* CIV. 83–3092 at 10 (D.S.D. Jan. 16, 1984) (unpublished memorandum opinion).

Thus, it is clear that members of the plaintiff class are among those households with the lowest income in the state.[4]

The point of contention in this case is whether the plaintiff class meets the second condition for receiving the highest level of assistance, that is, whether they have the highest energy costs in relation to income. The state argues they do not because their Section 8 heating allowance reduces their vulnerability to heating costs. As a threshold matter, it does not appear from the record that the heat component of the Section 8 utility allowance actually measures the amount of heating assistance a family receives by virtue of its residence in Section 8 housing. The utility allowance is added to the "contract" or actual rent of a unit to arrive at a family's total shelter cost. To calculate the government's actual contribution to the family's heating cost, the state would have to subtract a corresponding portion of the family's contribution from the heating portion of the utility allowance. Thus, the state's plan may not even do what it purports to do: set off one heating subsidy against another.

The district court did not disapprove of the state's plan on that ground. It assumed, without addressing the issue, that deducting the Section 8 heating allowance from a family's actual heating expenses yielded their out-of-pocket heating costs. The court found that after the deduction, most Section 8 families still paid a higher percentage of their income for heating costs. The court therefore held that the state's plan violated section 8624(b)(5) because it did not give the highest level of assistance to those with the highest energy costs in relation to income. We agree.

The district court used the example of a class household and a non-class household living in the same region of the state with the same family size, the same housing type, the same heating type and the same yearly heat costs. The subsidized household has a yearly income of $3,000 and a Section 8 heating allowance of $284. The non-class household has a yearly income of $9,330 and no heating allowance. Both households have a yearly average heat cost of $986.[5] Without the LIEAP grant, the non-class household pays the full heating bill, which the district court found to be 10.5 percent of its income. Without the LIEAP grant, the subsidized household pays $702 in heating costs, which the district court found to be twenty-three percent

---

**4.** The state cites statistics showing that some non-class members receiving LIEAP assistance in the state are also in the lowest income brackets. This fact is not relevant to whether the state's treatment of the plaintiff class is consistent with the provisions of the LIHEAA.

**5.** Neither the parties nor the record explains why there is such a discrepancy between actual heating costs and the Section 8 heating allowance which is supposed to be based on actual heating costs.

of its income. Because the subsidized household has a higher heating cost to income ratio, the district court held it should receive a higher LIEAP grant than the non-subsidized household. Under the state's plan, the opposite is true: the Section 8 household's LIEAP grant is $306,[6] while the non-subsidized household receives $590.

The state seems to have no quarrel with the district court's analysis up to this point. It argues, however, that the Section 8 heating allowance, already subtracted from the class household's provable heating expenses to come up with the actual heating cost, should also be added to the LIEAP grant to arrive at the Section 8 family's level of assistance. If this additional calculation is made, the Section 8 household in the example receives a higher total level of assistance than the nonsubsidized household.

We disagree with the state's suggested method of calculation because it runs counter to our reading of section 8624(b)(5). That section requires that the "highest level of assistance" go to those households with the highest heating cost to income ratio. The state would have us read "assistance" in this sentence to mean combined heating assistance from all sources both inside and outside the LIHEAA. We can find nothing in the subchapter, and the state cites no legislative history, which would indicate "assistance" here means anything other than the grants authorized by the subchapter itself.[7] Thus, the district court was correct in ruling that the heating cost to income ratio alone should determine which households should receive the highest level of benefits the state makes available through the LIHEAA.

We do not hold today that, in order to comply with section 8624(b)(5), the state must calculate heating costs to income ratios for every LIEAP applicant. Here, however, the state has singled out one group of applicants and required them to prove actual heating costs, even though other groups in the state receive government subsidies which are traceable to subsistence costs including heat. The state has consequently drastically reduced this group's entitlement to benefits. In such a situation, we think it is incumbent upon the state to assure that those who are so singled out are treated in a way that fully complies with the LIHEAA.

Neither does our reading of section 8624(b)(5) require the state to pay out a level of LIEAP benefits which exceeds an applicant's actual heating costs. The federal funds made available to the states through the LIHEAA are for "energy assistance." The state need not pay a full grant to a household if their actual energy costs are less than the grant. The general prohibition against using other forms of public assistance to reduce an applicant's entitlement to LIHEAA benefits, *see, supra,* at 537–538, does not prevent the state from assuring that LIHEAA funds are used only to pay a family's heating costs, which heating costs in subsidized homes have already been reduced by the amount of the heating subsidy.

### CONCLUSION

Even though the state's plan does not directly violate section 8624(f), we are persuaded that the state's setoff runs counter to Congress's intent to offer LIHEAA funds as a supplement to other forms of public assistance. We agree with the dis-

---

6. Plaintiff's exhibit 1, appended to the district court's memorandum opinion of January 16, 1984, states that the LIEAP benefit level for the Section 8 household in this example is $406 under the state's plan. This appears to be a miscalculation. Under the state's plan, a Section 8 household receives the difference between their Section 8 heating allowance and the LIEAP benefit level of a similarly situated household. In the example, this amount is the difference between $509 and $284, or $306.

7. Although the Act sometimes speaks of "assistance available under this subchapter," *see* 42 U.S.C. § 8624(b)(3), (b)(7)(C) & (b)(10), other references simply to "assistance" seem also to refer to assistance available under the subchapter. *See* 42 U.S.C. § 8624(b)(7)(A). The Act contains no reference to assistance available under Section 8.

trict court that the state's plan violates section 8624(b)(5) because it singles out subsidized housing residents for differential treatment and then does not pay the highest level of assistance available under the Act to those class members who have the highest energy costs in relation to income. Finally, nothing in this opinion is meant to prevent the state from limiting the LIHEAA grant to actual heating costs, after first deducting the amount of the Section 8 subsidy attributable to heating costs.