**DEPARTMENT OF HEALTH AND WELFARE, STATE OF IDAHO, et al., Plaintiffs-Appellees,**

v.

**John BLOCK, Secretary of Agriculture, Defendant-Appellant.**

No. 85–3654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1985.

Decided March 4, 1986.

ate a good-faith exception to the exclusionary rule for police conduct.

Michael DeAngelo, Deputy Atty. Gen., Boise, Idaho, for plaintiffs-appellees.

Ricardo K. Willard, Peter R. Maier, U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Before WRIGHT and REINHARDT, Circuit Judges, and INGRAM,* District Judge.

PER CURIAM:

The Secretary of Agriculture appeals from an order entered by the Idaho District Court which enjoined the Secretary from enforcing a policy, embodied in a regulation, that disallowed consideration of ven-

* The Honorable William A. Ingram, United States District Judge for the Northern District of Cali-

dor-paid energy costs in determining food stamp benefit eligibility. The case presents questions of statutory interpretation involving provisions of two statutes under which federal funding is made available to aid eligible citizens. In dispute is the impact of home energy assistance payments made pursuant to the Low Income Home Energy Assistance Act (LIHEAA), 42 U.S.C. § 8621 *et seq.*, upon the eligibility and benefit levels of recipients of food stamp benefits under the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*

In a memorandum opinion and order issued on December 21, 1984, the district court ordered the Secretary to rescind all "quality control variances" (federal sanctions which could result in a state's loss of federal food stamp funding) upon appellee State of Idaho, Department of Health and Welfare (Idaho), resulting from Idaho's allowance of LIHEAA reimbursed home energy costs in determination of the "excess shelter expense deduction" (an element of the computation of food stamp benefit eligibility under the Food Stamp Act.) The district court also permanently enjoined the Secretary from disallowing such federally reimbursed energy costs in the computation of the excess shelter expense deduction under the Food Stamp Act, or from otherwise penalizing Idaho food stamp recipients, or Idaho as food stamp program administrator, for allowing such deduction treatment. We affirm the trial court's decision that under the pertinent statutes, a household's food stamp benefits should not be diminished by virtue of the form of energy assistance payment. Like the district court, we need not reach the constitutional issue.

## STATUTORY BACKGROUND

*The Low Income Home Energy Assistance Act (LIHEAA)*

In 1980 Congress passed the Home Energy Assistance Act (HEAA) (as Title III of

fornia, sitting by designation.

the Crude Oil Windfall Profit Tax Act of April 2, 1980, 94 Stat. 229, 288–99, *formerly codified at* 42 U.S.C. § 8601–8612 (Supp. IV 1976) to assist low income families to meet the rising costs of energy for home use. Under the HEAA's provisions, Congress authorized the Secretary of Health and Human Services to make grants to the states, which would be responsible for distributing the benefits to qualified households. 42 U.S.C. §§ 8603, 8607. The HEAA subsequently was repealed in 1981 and reenacted as the LIHEAA. Pub.L. No. 97–35, §§ 2601–10, 95 Stat. 893 (Aug. 13, 1981), *codified at* 42 U.S.C. §§ 8621–8629 (1982). The purpose of the program remained unchanged, and as in the HEAA, states were charged with responsibility of administering. the program. 42 U.S.C. §§ 8623–24. Under § 8624(b)(7) of the LIHEAA, a state has the discretion either to pay the energy supplier on behalf of the households participating in the program (i.e., to make "vendor payments") or to pay the household directly.

Section 8624(f) of the LIHEAA was a re-enactment of a substantially identical provision of the HEAA which was found at 42 U.S.C. § 8612(c) (Supp. IV 1976). Congress most recently amended 42 U.S.C. § 8624(f) by adding the words "unless enacted in express limitation of this paragraph" after the phrase "Notwithstanding any other provision of law ..." Pub.L. No. 98–558, § 605(e), 98 Stat. 2892 (October 30, 1984). Section 42 U.S.C. § 8624(f) provides as follows:

> Notwithstanding any other provision of law unless enacted in express limitation of this paragraph, the amount of any home energy assistance payments or allowances provided to an eligible household under this subchapter shall not be considered income or resources of such household (or any member thereof) for any purpose under any Federal or State law, including any law relating to taxation, food stamps, public assistance, or welfare programs.

The Conference Report accompanying the original HEAA of April 2, 1980, ex-plained with regard to then § 8612(c) (subsequently re-enacted in substantially identical form in 1981 as § 8624(f)):

> 6. The conference agreement requires that fuel assistance payments or allowances provided under this title will not be considered income or resources of an eligible household for any purpose under a Federal or State law. The conferees wish to emphasize that this provision applies regardless of whether the fuel assistance is paid directly to the household or to the supplier of energy to the household. Thus, under any law, such as the Food Stamp Act of 1977, which provides that benefits may depend on the expenditures of the household for fuel, any portion of these expenditures which may be paid by the fuel assistance program authorized in this conference agreement will not be considered a resource available to this household even if the payment is made directly to the energy supplier. Thus, under such a law, benefits will be computed as if the total cost of the fuel, including the amount of assistance provided, had been paid by the household.

H.R.CONF.REP. NO. 817, 96th Cong., 2nd Sess. (1980), *reprinted in* 1980 U.S.CODE CONG. & AD.NEWS 410, 705–06.

*The Food Stamp Act*

In 1964, Congress passed the Food Stamp Act in order to "raise levels of nutrition among low-income households." Pub.L. No. 91–671, § 2, 84 Stat. 2048 (Jan. 11, 1971), *codified with amendments at* 7 U.S.C. § 2011 (1970). Under the Act the Secretary of Agriculture is authorized to administer a food stamp program and issue and promulgate regulations to that effect. 7 U.S.C. § 2013(a), (c). Section 2014 of the Act governs eligibility standards for food stamp benefits. In 1977 Congress codified the allowable exclusions and deductions when computing household income for purposes of determining food stamp eligibility and benefit levels. Pub.L. No. 95–113, § 1301, 91 Stat. 958, 962–63 (Sept. 29, 1977), *codified at* 7 U.S.C. § 2014(d), (e) (Supp. I 1976). In the Food Stamp Act

Amendments of 1980, Congress enacted § 2014(d)(11), which excluded from the definition of "income" for food stamp benefit purposes "any payments or allowances made under (A) any federal law for the purpose of providing energy assistance ..." Pub.L. 96–249, Title I §§ 102, 112, 94 Stat. 357, 361 (May 26, 1980). At this time the House Committee on Agriculture noted that the same issue as addressed in § 2014(d)(11) arose in the Senate during its deliberations in 1979 on the Home Energy Assistance Act (HEAA), and that in considering the HEAA bill the Senate adopted an amendment inserting a similar exclusion in the Food Stamp Act. The House Committee on Agriculture expressed a preference that amendments to the Food Stamp Act be made under its aegis, however, and thus incorporated § 2014(d)(11) into the Food Stamp Act Amendments of 1980. H.R. NO. 788, 96th Cong., 2nd Sess. 122, *reprinted in* 1980 U.S.CODE CONG. & AD. NEWS 843, 955–56. The committee explained in its report:

> The Committee's intent is that all energy assistance provided households through the use of Federal, State, or local funds flowing from Federal, State, or local laws that focus on the problem of energy assistance would be entirely excluded from food stamp income regardless of the form which it takes and, of course, from food stamp resources as well regardless of the period of time such assistance is designed to cover.

*Id.* at 956.

> The committee report also states:

> The new exclusion would not effect the method of calculating deductions, which permits shelter expenses to be deducted in the month when such expenses are billed to a household or otherwise become due, even if not then paid. See 7 C.F.R. § 273.10(d)(2). If a household receives an energy allowance or grant, that allowance or grant is not to be included in income at all, but the energy costs which it covers may continue to be treated as a potentially deductible shelter expense when billed or due. On the other hand, where the energy allowance or grant takes the form of a vendor payment, as under existing law, no deductible expense would be incurred, since the regulations specifically provide that "an expense covered by an excluded reimbursement or vendor payment shall not be deductible", 7 C.F.R. § 273.10(d)(1).

*Id.* at 956–57.

In 1981, Congress amended 7 U.S.C. § 2014(e), the provisions governing deductions in computing household income, adding the phrase "with respect to expenses other than expenses paid on behalf of the household by a third party" as a qualifier to the availability of an excess shelter expense deduction. Pub.L. 97–98, § 1307, 95 Stat. 1213, 1283 (Dec. 22, 1981). Section 7 U.S.C. § 2014(e) provides in pertinent part:

> (e) In computing household income for purposes of determining eligibility and benefit levels ... [h]ouseholds ... shall also be entitled, with respect to expenses other than expenses paid on behalf of the household by a third party, to ... (2) an excess shelter expense deduction to the extent that the monthly amount expended by a household for shelter exceeds an amount equal to 50 per centum of monthly household income after all other applicable deductions have been allowed ...

The House Committee on Agriculture explained that the 1981 amendment to § 2014(e) was intended to:

> clarify that households are not entitled to receive deductions from gross income for expenses that are paid on the households behalf by a third party. Thus, if a household's winter fuel bill is paid directly by an energy assistance program, i.e., the program pays money to the fuel provider directly, the household is not to be given a deduction from income (excess shelter expense) for the amount of the fuel bill.... This provision would maintain current regulatory practice and codify it in law.

H.R.REP. NO. 106, 97th Cong., 1st Sess. at 128–29.

## FACTS

Appellee, the Idaho Department of Health and Welfare, brought this action in

1984. Idaho administers programs under the LIHEAA which provide assistance to low and fixed income households to offset home energy costs. The State of Idaho also administers programs pursuant to the Food Stamp Act. In determining food stamp eligibility and the amount of benefits, Idaho includes a recipient's energy costs as an allowance in computing the excess shelter expense deduction even though those energy costs are paid by the government pursuant to the LIHEAA. In Idaho, payments under the LIHEAA are made to recipients by means of a check made out to both the creditor and the recipient. When the Secretary advised Idaho that such a practice was improper under 7 C.F.R. § 273.10(d)(1) [1] and that Idaho's food stamp funding therefore might be terminated, Idaho brought the instant action, asserting that the Secretary's exclusion of LIHEAA vendor payments from use in computing excess shelter expense deduction is improper under the LIHEAA, the Food Stamp Act, and the United States Constitution.

The district court granted the state's motion for summary judgment. The court explained preliminarily:

> The regulations governing administration of the food stamp program exclude "vendor payments" from consideration as income or deductions under sections 2014(d) and (e). 7 C.F.R. §§ 273.9(c)(1) and 273.10(d)(1). Vendor payments are defined as "money payments that are not payable directly to a household, but are paid to a third party for a household expense." 7 C.F.R. § 273.9(c)(1). In most instances, the classification of an expense paid by a third party as a vendor payment will have no effect on the amount of food stamp benefits. If payment is made directly to the household, that payment will be considered income, but will also be allowed as a deduction, with no net effect of [sic] the benefit. If payment is made directly to the creditor (a vendor payment), that payment 'will not be considered income, but also will not be allowed as a deduction and, again, there is no net effect on the benefit. LIHEAA payments, however, cannot be considered as income for purposes of determining food stamp benefits. 42 U.S.C. § 8624(f). This is true whether the payments are made directly to the household or directly to the creditor. Under the Secretary's "vendor payment" regulatory scheme, the LIHEAA payments will only be allowed as a deduction if they are made to the household. Consequently, the Secretary's "vendor payment" scheme, which usually results in a wash, now creates an inequity between those food stamp recipients whose LIHEAA payments are made to the household and those whose creditors are paid directly. *Dept. of Health and Welfare v. Block*, No. 84–1106, slip. op. at 4–5 (D. Idaho Dec. 21, 1984) (footnote omitted).

In its opinion the court commented that as to the Secretary's position regarding non-deductibility of LIHEAA vendor payments, versus deductibility treatment if the energy payment is made directly to the household:

> The Secretary attempts to justify this inconsistency by arguing that payments made directly to the household are not necessarily expended for energy costs. Implicit in this assertion is the Secretary's position that households who use government assistance payments for expenses *other* than that for which they were intended should be rewarded with approximately $20 a month in increased food stamp benefits [a figure derived by the court using a hypothetical household with a $100 per month LIHEAA paid energy cost]. It is unlikely Congress intended such a result. It must be emphasized that regulations implement statutes, and not vice versa. The inequity which is at the heart of this controversy is caused by the Secretary's vendor pay-

---

1. 7 C.F.R. § 271.10(d)(1)(i) provides in relevant part: "An expense covered by an excluded reimbursement or vendor payment shall not be deductible."

ment regulatory scheme; not by congressional mandate.

*Id.*, slip op. at 8 (emphasis the court's).

The district court held the Secretary's position invalid, reasoning that because the LIHEAA impacts numerous federal and state assistance programs, each invariably with its own income requirements for eligibility and benefit levels, it is unlikely Congress evaluated the requirements in each assistance program to determine the full impact the LIHEAA might have. The court stated that the congressional intent behind the LIHEAA, specifically that behind 42 U.S.C. § 8624(f), rather was to ensure that eligibility and benefit levels under other assistance programs would not be affected by LIHEAA payments. The court relied upon the conference committee report accompanying the LIHEAA's predecessor, the HEAA, as strong evidence of legislative intent. The district court's decision is consistent with that of the Eighth Circuit Court of Appeals in *Schmiege v. Secretary of Agriculture*, 693 F.2d 55 (8th Cir.1982), where that court, faced with the same question, relied on the same conference committee report and interpreted 42 U.S.C. § 8624(f) in a similar fashion.

The district court ordered the Secretary to rescind prior sanctions imposed for allowance of, and enjoined the Secretary from sanctions which in the future would disallow, "energy costs reimbursed by payments under the LIHEAA in the computation of the excess shelter expense deduction provided for in 7 U.S.C. § 2014(e), or otherwise penalizing food stamp recipients or the State of Idaho, as the administrator of the food stamp program, for allowing such deductions." *Dept. of Health and Welfare v. Block*, No. 84–1106, slip. op. at 10–11 (D. Idaho Dec. 21, 1984).

## DISCUSSION

There is no dispute that the district court's order is freely reviewable as a question of law. *Alonzo v. AFC Property Management, Inc.*, 643 F.2d 578, 579 (9th Cir.1981). We proceed to the issue of whether Idaho's form of LIHEAA vendor payment requires disallowance of expenses so paid in computing the shelter expense deduction under Food Stamp Act benefit eligibility provisions.

The Secretary argues that the Food Stamp Act, specifically 7 U.S.C. § 2014(e), prohibits shelter expense deduction treatment for Idaho's form of LIHEAA payments, in that they are "expenses paid on behalf of the household by a third party" under § 2014(e). The Secretary contends such a construction is consistent with the LIHEAA, which does not specifically address the deductibility of energy expenses, but only provides that LIHEAA payments "shall not be considered income or resources of such household for any purpose under any Federal or State law, including any law relating to ... food stamps...." 42 U.S.C. 8624(f) (1982).

The Secretary contends that a construction employing this distinction between deductions and income is consistent with the two step calculation used under § 2014 for determining food stamp eligibility (a process like that used in federal income tax law, i.e., (1) compute gross income minus exclusions, (2) that figure minus deductions equals net income.) The Secretary argues that the decisions of the district court and the Eighth Circuit in *Schmiege*, eviscerate § 2014(e) and that only the Secretary's position gives full effect to both § 2014(e) and § 8624(f). The Secretary maintains that the district court's and Eighth Circuit's reliance on the Conference Report accompanying the 1980 HEAA (the 1981 LIHEAA's predecessor) to determine Congress' intent is misplaced because in 1981 Congress amended the Food Stamp Act to make vendor payments non-deductible expenses, and through its House Committee on Agriculture expressed an intention to "maintain current regulatory practice and codify it into law." H.R.REP. NO. 106, 97th Cong., 1st Sess. at 128–29.

"[I]n all cases of statutory construction, our task is to interpret the words of [the] statutes in the light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Org.*, 441 U.S.

600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). "There must be something to make plain the intent of Congress that the letter of the statute is not to prevail." *TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978), quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930). In the instant case, "while the Secretary's method of calculation might be regarded as technical compliance with the wording of the statute because the energy assistance payment is not treated as 'income,'" *Schmiege,* 693 F.2d at 56, that method results in the diminishing of food stamp benefits by reason of the form the energy payment takes. The intent of Congress, as expressed in the Conference Report accompanying enactment of the HEAA of 1980, was otherwise. "Thus, under any law, such as the Food Stamp Act of 1977, ... benefits ... will be computed as if the total cost of the fuel, including the amount of assistance provided, had been paid by the household." H.R.CONF.REP. NO. 817, 96th Cong., 2d Sess. at 154, re: printed in 1980 U.S.CODE CONG. & AD. NEWS at 705–06. In enacting § 8624(f) in 1981, a provision substantially identical to its predecessor in the HEAA, 42 U.S.C. § 8612(c), Congress obviously intended to effectuate the purpose expressed in the HEAA Conference Report. There is no reason to believe that Congress' intent regarding the impact of energy payments on food stamp benefits, as evinced in the Conference Report, changed with enactment of the LIHEAA in 1981.

The Secretary relies on the House Agriculture Committee Report accompanying the 1981 amendments to the Food Stamp Act, by which § 2014(e) was amended to specifically preclude consideration of "expenses paid on behalf of the household by a third party" in computing the excess shelter expense deduction for food stamp eligibility purposes. The House Committee on Agriculture Report does evince an intent to codify into law the regulatory practice of disallowing as a deduction energy assistance payments paid directly to the fuel provider. However, the Conference Report accompanying the energy assistance legislation, which evinces an intent that benefits be computed as if the household paid the total fuel cost, is entitled to more weight than a report from one committee of one house of Congress. "Because the conference report represents the final statement of the terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent." *Demby v. Schweiker,* 671 F.2d 507, 510 (D.C.Cir.1981); *See Nat. Ass'n. of Greeting Card Pubs. v. USPS,* 462 U.S. 810, 832 n. 28, 103 S.Ct. 2717, 2731 n. 28, 77 L.Ed.2d 195 (1983) (a report of the entire conference committee "would be due great weight.")

Contrary to the Secretary's assertions, the ruling below does not "eviscerate" § 2014(e), i.e., accomplish the disfavored result of repeal by implication. The myriad of other "expenses paid on behalf of the household by a third party" remain prohibited as factors in computation of the excess shelter expense deduction under § 2014(e). With respect to energy assistance payments under § 8624(f), however, Congress' most recent 1984 amendment of that provision, adding to it "unless enacted in express limitation of this paragraph," makes clear that LIHEAA payments are removed from the universe of "vendor payments" otherwise prohibited from deduction treatment under § 2014(e). That is, until such time as Congress may legislate "in express limitation of" § 8624(f), it is Congress' prevailing intent, as expressed in the Conference Report, that benefits "under any law, such as the Food Stamp Act ... will be computed as if the total cost of the fuel, including the amount of assistance provided, had been paid by the household." "When there are two acts upon the same subject, the rule is to give effect to both, if possible ..." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974), quoting *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). Our construction gives effect to both § 2014(e) and § 8624(f).

The decision of the district court is AFFIRMED.