Jacqueline A. CRAWFORD and Nancy L. Emerson, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

William JANKLOW, Governor of the State of South Dakota, and James Ellenbecker, Secretary of the South Dakota Department of Social Services, and the Agents, Employees, and Successors of the above, Defendants.

Civ. No. 82–3078.

United States District Court,
D. South Dakota, C.D.

Feb. 18, 1983.

Mark Falk, Black Hills Legal Services, Inc., Rapid City, S.D., for plaintiffs.

Mark V. Meierhenry, Atty. Gen., Janice Godtland, Asst. Atty. Gen., Pierre, S.D., Brent A. Wilbur, Sp. Asst. Atty. Gen., Pierre, S.D., for defendants.

MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

Named plaintiffs are residents of the State of South Dakota who receive home energy assistance through their participation in the low income housing program defined in 42 U.S.C. § 1437f, commonly called the Section 8 housing program. They have sued the Governor of South Dakota and the Secretary of the South Dakota Department of Social Services for the categorical exclusion of named plaintiffs and of persons similarly situated from participation in the State's Low Income Energy Assistance Program (LIEAP), funded and defined by Congress in 42 U.S.C. §§ 8621–8629. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343(3).

 Class status has been granted to plaintiffs in this suit by order of this Court at the end of a hearing concerning the grant of a preliminary injunction on February 4, 1983. Rule 23(c)(1) Fed.R.Civ.P. The State's LIEAP plan, as discussed below, categorically excludes from participation all persons who live in subsidized or public housing. The class certified comprises all persons excluded from participation in South Dakota's LIEAP program by the State's regulation. Plaintiffs have demonstrated that there are some 3,600 persons in South Dakota living in Section 8 subsidized housing alone. The class therefore meets the numerosity prerequisite of Rule 23(a)(1). Since the State's LIEAP plan categorically excludes persons living in subsidized or public housing, there are questions of law or fact common to the class. Rule 23(a)(2). Representative plaintiffs each live in Section 8 subsidized housing in South Dakota and have been denied LIEAP funds. They are, therefore, typically situated within the class they seek to represent. Rule 23(a)(3). Finally, the named plaintiffs have secured representation by the Black Hills Legal Services, Inc., and have demonstrated that they will fairly and adequately protect class interests. Rule 23(a)(4). Finally, the State's actions toward persons living in subsidized or public housing are applicable to all class members generally. Injunctive relief would affect all class members equally. Therefore, this action is maintainable as a class action. Rule 23(b)(2).

This Court is no stranger to the Low Income Energy Assistance Program. *See Naegle v. Department of Social Services,* 525 F.Supp. 1030 (D.S.D.1981); *Eiserman v. Department of Social Services,* No. 81–3031, slip op. (D.S.D. Oct. 16, 1981); *Grueschow v. Harris,* 492 F.Supp. 419 (D.S.D.), aff'd 633 F.2d 1264 (8th Cir.1980). Previous cases before this Court differ significantly from the case at bar, because they were predicated upon law in effect prior to the watershed date of August 13, 1981, the date of passage of the Omnibus Budget Reconciliation Act (OBRA). Representing "a victory for those seeking to minimize federal involvement in the disbursement of [social service] funds," *South Eastern Human Development Corp. v. Schweiker,* 687 F.2d 1150 (8th Cir.1982), OBRA reduced significantly federal regulations that conditioned the state's ability to allocate federal monies granted to them. The LIEAP program presently before this Court was funded by the OBRA enactment. Rather than answering to federal regulations, the State's plan must now merely meet the mandates of the congressional statute. These mandates are few and broadly sketched, but the parties agree the issue here is whether South Dakota's LIEAP program meets the prerequisites of 42 U.S.C. § 8624(b)(5):

> [T]he chief executive of each State shall certify that the State agrees to—
>
>> (5) provide, in a manner consistent with the efficient and timely payment of benefits, that the highest level of assistance will be furnished to those households which have the lowest incomes and the highest energy costs in relation to income, taking into account family size.

Faced with limited funds and a number of needy households, the State did not set out to make a total subsidy of anyone's heating bill. Rather it used certain assumptions that would efficiently deliver some help to a large number of households. Essentially, the State created a matrix or

formula to calculate amounts disbursed under the LIEAP program. Disbursements are based upon estimated annual fuel bills for a household of 850 square feet with average fuel consumption habits. The State uses a different formula for each kind of heating fuel and also divides the state into four distinct regions, based upon the number of heating degree days. Finally, as household income rises through a series of income brackets, the State decreases, by ten percent at each step, the percentage of each household's estimated annual fuel bill that will be subsidized, from seventy percent to forty percent. The State limits participation in its LIEAP program to households it considers "vulnerable" as defined by A.R. S.D. § 67:15:01:06:

> Vulnerable households are those households in which the members meet the following requirements:
> (1) Own or rent their homes;
> (2) Do not live in subsidized or public housing; and
> (3) Are totally responsible for paying their own heating costs directly to a heating supplier or as a portion of rent.

Eligibility for the LIEAP program is defined by the Congress as households in which at least one person receives AFDC funds, supplemental social security money, food stamps or veterans benefits, 42 U.S.C. § 8624(b)(2)(A), or households whose income does not exceed the greater of 150 percent of the poverty level of the State or 60 percent of the State's median income, 42 U.S.C. § 8624(b)(2)(B). In South Dakota, the relevant figure for income eligibility is 150 percent of the poverty level which ranges from $7,020 per annum for a household of one member to $27,810 per annum for a household of ten members. As the LIEAP program is currently being run in South Dakota, 78.7% of the households receiving LIEAP funds from the state have an annual income of under $8,000.

The largest conceptual problem faced by any novice first approaching LIEAP, or any other governmentally funded fuel assistance program, is understanding that the program is not meant to cover a recipient's actual fuel bills. To the extent that subsidies are based on average consumption habits of an average household living in an average sized house, the dollar amount paid to any individual is somewhat arbitrary. In many cases, the LIEAP subsidy will not in fact pay 70% of the recipient's actual heating bills.[1] In some cases, it may pay more. Under the South Dakota LIEAP plan, the figures of 70, 60, 50 or 40 percent serve to locate a recipient on the payment matrix; they do not correspond to the recipient's fuel consumption or fuel bills.

Plaintiffs contest their categorical exclusion from participation in South Dakota's LIEAP program, because households less needy than those contained in plaintiffs class can receive South Dakota's LIEAP funds, while members of plaintiff class cannot receive consideration for funds.[2] The State defends its exclusion on the basis that the exclusion allows them to spread dollars to the greatest number of needy people. The State concedes that it has created, for LIEAP purposes, a special class of people. It argues, however, that it permissibly excludes this class from participation in LIEAP for a rational purpose. *See e.g. Schweiker v. Hogan,* —— U.S. ——, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982). In pressing its argument, the State compares two households, one living in Section 8 subsidized housing and the other paying the market rate for its housing. If each household has an annual income of $3,000[3] and if the State must choose between the two households, the household not receiving a subsidy should receive LIEAP funds.

The simplicity of the State's comparison hides much in the actual effect of its exclu-

---

**1.** In similar ways, benefits paid to families to defray heating expenses under Section 8 housing or AFDC are not tied to actual fuel bills.

**2.** The State notes that class members are not prohibited from applying to the program. While it is true that the State maintains no bar

to application, it is also true that application by plaintiff class members leads to summary rejection.

**3.** The income figure of $3,000 was used by the State in arguing its case to the Court.

sion and in the operation of its plan. Fundamental to the State's comparison is the State's assertion that Section 8 households should be ineligible for LIEAP funds, because Section 8 households uniformly receive a heating subsidy greater than that they might receive from LIEAP. The assertion holds true for households which dwell in larger houses or apartments. It is not true for smaller households. If one were to assume a two-member household living in a one-bedroom subsidized apartment and receiving annually $3,000 income, the inaccuracy of the State's assertion is clear. Regardless of the type of fuel this household might use to heat its home and regardless of the region of the state in which this household might be located, payments under LIEAP, in every case save one, are larger than those made by the Section 8 housing program.[4]

Not only does this analysis reveal a fallacy underlying the State's assumptions in excluding subsidized households, it also reveals a serious legal deficiency in the State's exclusion. The State makes its comparison to justify spreading LIEAP funds to as many people as possible. The congressional statute authorizing and funding LIEAP does not permit a state simply to spread funds as thinly or thickly as it deems useful. Congress has included directions for arranging priorities in the distribution of funds:

> ... The highest level of assistance will be furnished to those households which have the lowest incomes and the highest

energy costs in relation to income, taking into account family size.[5]

42 U.S.C. § 8624(b)(5). In this subsection, Congress placed a limitation upon states participating in the LIEAP program. If choices must be made between families, the most needy must receive assistance first.

The congressionally mandated priority makes a comparison of the plan's effect on families of different incomes relevant to a determination of the plan's legality. Such a comparison reveals another flaw in the state's assumptions. The same two-member household used above with an annual income of $3,000, living in a one-bedroom subsidized apartment located in Region 4 of the state may be used as a basis for comparison. As a Section 8 household, this family receives $23.67 per month, or $284 annually, in heating subsidies for its electric heat. Income eligibility for a family of two under LIEAP in South Dakota is $9,330. Thus a family of two living in Region 4, heating with electricity, with an income of $9,330 may receive a 60% subsidy of $425, assuming the highest price per kilowatt hour. The LIEAP formula indicates that the 60% subsidy is based upon an estimated annual energy bill of $(425 \div .6 =)$ $708 for an average family. Based on that figure and deducting the subsidy received from the Section 8 program, the Section 8 household is responsible for $(708 - 284 =)$ $424 in heating bills. The latter figure represents $(424 \div 3,000 =)$ 14.1% of the family budget.[6] The non-Section 8, LIEAP subsidized

---

4.

| | Section 8 Heating Subsidy for 1 Br. Apt. | | Lowest LIEAP Heating Subsidy |
|---|---|---|---|
| Fuel Oil | $(40.33 \times 12 =)$ | $483.96 | $490 |
| Propane | $(26.14 \times 12 =)$ | $313.68 | $430 |
| Nat. Gas | $(16.96 \times 12 =)$ | $203.52 | $255 |
| Electricity | $(23.67 \times 12 =)$ | $284.04 | $270 |

The figures assume a $3000 annual income and a seventy percent LIEAP payment. LIEAP payments are greater in the colder regions of the state. The LIEAP payment for electricity is $270 for Region I (the warmest region in South Dakota) patrons paying less than 3¢ per kilowatt hour. All other electricity payments for LIEAP are greater than the Section 8 subsidy.

5. Legislative history confirms that 42 U.S.C. § 8624(b)(5) is a subsection that establishes priority for receipt of assistance:

> 15. *Priority for Assistance:* In a manner consistent with the efficient and timely payment of benefits, the State is to provide the highest level of assistance to households which have the lowest incomes and highest energy costs in relation to income, taking into account family size.

H.R.Conf.Rep. No. 97–208, 97 Cong. 1st Sess. 1008, *reprinted in* 1981 U.S.Code Cong. & Ad. News 396, 1370. *See also* S.R. No. 97–139, 97th Cong. 1st Sess. 909, *reprinted in* 1981 U.S.Cong. & Ad.News 933–34.

6. The figure 3,000 rather than 3284 (income plus Section 8 heating subsidy) is used to compute the percentage to compare the vulnerabili-

family, was vulnerable, before subsidy, to the extent of (708 ÷ 9330 =) 7.6% of its family budget.[7] Therefore, even accounting for the Section 8 subsidy, the Section 8 family is more vulnerable to heating costs than the non-Section 8 household receiving LIEAP funds.

Looked at from a different perspective, the Section 8 family, but for its Section 8 residence, with its $3,000 annual income would be eligible for a 70% LIEAP subsidy. If its average projected energy heating bills amount to $708 per year and its Section 8 heating subsidy amounts to $284 per year, then the Section 8 household is presently receiving a (284 ÷ 708 =) 40.1% subsidy. Although the LIEAP program was not designed to offer a repetitive subsidy, the State has presented no rational basis for categorically denying Section 8 households a cushion against rising heating costs equal to that received by other eligible households in South Dakota.

▮ The State's categorical exclusion fails to meet the standards set by Congress in formulating the LIEAP program. The State does not give priority to those households with the lowest incomes and highest energy costs relative to income as required by Congress. It excludes significant numbers of the most vulnerable households. It is a well established matter of statutory law that Congress can condition its grant of funds with mandatory standards. A state regulation that is inconsistent with the standards set forth by federal law is invalid. *King v. Smith,* 392 U.S. 309, 333, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118 (1968). *See also Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974); *Nebraska Dept. of Roads v. Tiemann,* 510 F.2d 446 (8th Cir.1975).

Moreover, the foregoing exercise in arithmetic is not intended to hold the State to a mathematically precise standard. *See Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). The United States Supreme Court has stated, however, that the concerns for efficient administration of social programs[8] acknowledged in *Dandridge* are limited by due process concerns. *United States Dept. of Agriculture v. Murry,* 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 757 (1973). The calculations cited in the preceding paragraphs and the inaccuracy of the State's underlying rationale for excluding subsidized households show that the State's LIEAP plan has deficiencies similar to those in the plan rejected by the Court in *Murry.* The State has excluded categorically households receiving heating assistance through subsidized housing. Although such households can apply to the LIEAP program, the application is doomed to futility. The State's exclusion "rests on an irrebuttable presumption often contrary to fact. It therefore lacks critical ingredients of due process . . . ." *Id.* at 514, 93 S.Ct. at 2836 (citations omitted).[9]

---

ty of each family to heating bills. The non-Section 8 family's income is computed without regard to the LIEAP subsidy.

7. Although the comparison in the text uses the highest electricity cost in the coldest region of the state, the comparison yields similar results using other regions and lower electricity costs. Only when comparing households in the warmest two regions of the state buying electricity at the lowest per kilowatt-hour cost does the relative positions of Section 8 and non-Section 8 households reverse. Moreover, the calculation is not dependent upon the type of fuel used by the family. Similar comparisons result from calculations using natural or propane gas and fuel oil.

8. South Dakota has met the administrative problem of including Section 8 households in LIEAP programs covering the previous two heating seasons by using a different matrix to calculate benefits for this class of households.

9. The frequency with which the State's assumption that Section 8 households receive benefits higher than those received under LIEAP affects actual South Dakota households may be gauged by the figures reported by the State describing current LIEAP beneficiaries. Households containing elderly persons comprise (6985 ÷ 14346 =) 48.7% of the households now receiving LIEAP assistance. Elderly persons are likely to live in one or two member households and to live in one bedroom or efficiency houses or apartments. Thus, the group about which the State's assumption is least accurate is also the group most heavily represented in the current LIEAP program.

The analysis of the State's exclusion thus far indicates that some households with few members presently excluded are eligible for some subsidy under LIEAP. The fallacy of the assumptions behind the State's exclusion is evident on other grounds as well. Again, the reason advanced by the State for excluding subsidized households is to avoid providing double subsidies. This rationale is selectively applied by the State to those people who live in Section 8 subsidized housing. As stated previously, one of the eligibility criteria established by Congress states that households receiving certain enumerated kinds of federal assistance are eligible to participate in LIEAP programs. Among these are households of families receiving AFDC assistance, and two families receiving AFDC assistance may serve as examples. A component of the AFDC benefits is a $43 per month ($560 per year) sum to defray utility bills incurred by eligible parents with dependent children.[10] If a family receiving AFDC moves into Section 8 subsidized housing, the benefits the family receives under AFDC and under Section 8 are adjusted so that the Government does not pay the utility subsidy twice to the same family. A Section 8 AFDC family and a non-Section 8 AFDC family both receive the core subsidy each month to be applied against utility bills. Despite sharing the status of families whose utilities are subsidized by the Government, one family can receive a second payment from the State through its LIEAP program while the other family is categorically excluded from participating from the State's program. The State has made no showing of a rational basis for excluding categorically all Section 8 households when the factor that disqualifies the Section 8 recipient—that is prior receipt of utility subsidies—is shared by persons now receiving LIEAP assistance.

Finally, the selectivity used by the State is evident in its treatment of households, other than Section 8 households, which re-ceive subsidies for their housing. The exclusion formulated by the State disqualifies households which "live in subsidized or public housing." The exclusion is categorical and appears to apply in its terms to all subsidized housing. The State uses the exclusion to deny LIEAP funds to Section 8 households. Through various federal and state programs, home buyers in South Dakota receive interest subsidies allowing them to finance the purchase of their homes. The State admits that this form of subsidized housing does not preclude these households from participating in the LIEAP program.[11] The State argues that home owners do not receive heating subsidies, but the provisions of the State's plan do not exclude persons who receive heating subsidies. They exclude persons who live in subsidized housing without reference to the target of the subsidy.

Fundamental to notions of equal protection is the responsibility of any government to apply its laws with an even hand. Governments have latitude to devise rational plans for the regulation and administration of economic or social programs. *See New York Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Marshall v. United States,* 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). A government's latitude is not unlimited, however, and South Dakota's LIEAP plan demonstrates more than simple administrative regulation. First, the State applies its rule unequally. Second, the line drawn by the State arbitrarily excludes one group receiving heating subsidies while including a different group receiving heating subsidies. The State has made more than a policy choice. It has directed its exclusion at a category of persons and denied that category equal protection of law.

■ The discussion and analysis described above indicates that the State in distributing LIEAP funds has violated federal

---

**10.** The monthly stipend is meant to apply to all utility bills, not heating bills alone.

**11.** The discrepancy in treatment between renters and owners violates a condition set by Con-gress in funding LIEAP. The State must agree to "treat owners and renters equitably under the program assisted under this title." 42 U.S.C. § 8264(b)(8).

statutes and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution. It must therefore modify its Low Income Energy Assistance Plan to cure the present plan's infirmities. A cured LIEAP plan must treat home owners and home renters equitably and may not categorically exclude households on the basis of governmentally funded subsidies. The foregoing constitutes the court's findings of fact and conclusions of law.