**Ruth BOLES and Barbara Oswald, on their own behalf, and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Anthony EARL, Governor of the State of Wisconsin, and Linda Reivitz, Secretary of the Department of Health and Social Services, Defendants.**

No. 84–C–771–C.

United States District Court,
W.D. Wisconsin.

Jan. 24, 1985.

*Law of the Federal Courts* §§ 42–43 (4th ed. 1983).

A. John Wabaunsee, Western Wisconsin Legal Services, LaCrosse, Wis., for plaintiffs.

Donald P. Johns, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This is a civil action in which plaintiffs seek declaratory and injunctive relief for defendants' allegedly unlawful administration of the Wisconsin Low Income Energy Assistance Program (LIEAP), established pursuant to the Low-Income Home Energy Assistance Act of 1981, 42 U.S.C. §§ 8621–8629. Plaintiffs Boles and Oswald, who receive federal rent subsidies under the Section 8 Existing Housing Program, 42 U.S.C. § 1437f, and Section 4 New Housing Program, 42 U.S.C. § 1437b, respectively, challenge defendants' complete exclusion of residents of subsidized housing from LIEAP in 1983–84, and delays in eligibility

and possible partial exclusion for 1984–85. Plaintiffs seek to have this action certified as a class action and seek a preliminary injunction concerning the administration of LIEAP during the 1984–85 heating season.

From the uncontroverted allegations of the complaint, and the affidavits and depositions submitted by the parties, and for the sole purpose of deciding these motions, I find that there is no genuine issue as to the following material facts.

### FACTS

Plaintiff Ruth Boles rents a privately owned residence in Whitehall, Wisconsin. Her rent is subsidized by the Trempealeau County Housing Authority under the Federal Housing Authority's Section 8 Existing Housing Program. 42 U.S.C. § 1437f; 24 C.F.R. Part 882. Included in her rent subsidy is an allowance for utility costs. The effect of this allowance is to increase the amount of the federal rent subsidy for her apartment. Plaintiff Boles pays for fuel oil to heat her house and also pays for her own electricity. In December, 1983, plaintiff Boles contacted the Trempealeau County Department of Social Services for an application for LIEAP benefits. Her application was denied on the grounds that it was state policy not to provide LIEAP payments to residents of federally subsidized housing, or to persons who received subsidies for their rent.

Plaintiff Barbara Oswald resides in the Kilbourn Apartments in Tomah, Wisconsin. The Kilbourn Apartments were constructed with a loan from the Farmer's Home Administration (FmHA) for low income rural rental housing. 42 U.S.C. § 1486. Plaintiff Oswald receives a rent subsidy from the Federal Housing Administration under the Section 4 New Housing Program, 42 U.S.C. § 1437b; 24 C.F.R. Part 880. Her apartment is heated by electricity. Included in her rent subsidy is an allowance for utility costs. The utility allowance reduces plaintiff Oswald's rent, but she is responsible for her electric bill. In the fall of 1983, plaintiff Oswald contacted the Monroe County Department of Social Services concerning an application for low income energy assistance. She was told that she was not eligible.

Plaintiffs Boles and Oswald receive Aid to Families with Dependent Children for themselves and their minor children residing in their home. Both plaintiff Boles' and plaintiff Oswald's heating costs exceed the utility allowance provided to them. Plaintiff Boles receives AFDC payments of $594.00 per month and lives in a household of four persons. She receives a total rent subsidy of $121.00 per month.

Defendant Anthony Earl is the governor of the State of Wisconsin and as such is responsible for enforcing the laws of the State of Wisconsin and ensuring state compliance with laws of the United States. Pursuant to 42 U.S.C. § 8624(a)–(c), the Chief Executive Officer of each state which applies for low income energy assistance must certify in that state's application that the state will comply with the specified statutory conditions in the development of the state plan and the distribution of assistance.

Defendant Linda Reivitz is the Secretary of the Department of Health and Social Services and as such was charged with the drafting and administration of the 1983–84 LIEAP plan and is responsible for the drafting and operation of the 1984–85 LIEAP plan. At all relevant times the defendants were acting under the color of state law.

The Low Income Home Energy Assistance Program is a federal block grant program authorized under the Low-Income Home Energy Assistance Act of 1981, 42 U.S.C. § 8621 *et seq.* The program is intended to assist low income households in meeting the high costs of energy and these households' emergency energy-related needs. The Low Income Home Energy Assistance Program is administered by the United States Department of Health and Human Services.

The amount of LIEAP money allocated to each state is based on a formula which takes into consideration the severity of

weather in the state, the aggregate residential energy expenditures in the state, and the number of low income residents of the state. This formula seeks to assure that each state receives the funds minimally necessary to assist low income residents to meet a portion of their energy costs. Pursuant to this formula, approximately $64 million of LIEAP fund was allocated to the State of Wisconsin for FY 1984 and the State of Wisconsin anticipates that the allocation for FY 1985 is $74 million. In addition, the State of Wisconsin had $6.5 million of unspent FY 1983 funds to spend in 1984 and has $11.8 million available for LIEAP from unspent FY 1984 funds. The State of Wisconsin had $70.5 million to spend on LIEAP in FY 1984 and estimates that there will be approximately $85.8 million available for the LIEAP program for FY 85 or the 1984–85 heating year.

The Department of Health and Social Services estimates that at least 6,300 Wisconsin households living in subsidized housing would be eligible for LIEAP payments apart from their receipt of rent subsidies [Deposition of Mary Southwick at pp. 23–24].

For the 1983–84 heating year, tenants who received any form of federal assistance for housing costs were denied eligibility for LIEAP payments. The Income Maintenance Manual issued by the Department of Health and Social Services excluded tenants residing in subsidized housing from eligibility. [Deposition of Peter Pawllisch, Exhibit 1].

Pursuant to 42 U.S.C. § 8624(b), the Department of Health and Social Services prepared a draft plan for submission to the federal government in order to obtain funds under the Low-Income Home Energy Assistance Act (LIHEAA) for the 1984–85 heating season. Prior to the expenditure of any funds received from the federal government under this act, the plan must be approved by the Joint Committee on Finance of the Wisconsin Legislature [Deposition of Mary Southwick at pp. 6–7]. The Department of Health and Social Services submitted its draft plan to the Joint Committee on Finance on August 15, 1984. The plan provided that residents of federally subsidized housing would be eligible for LIEAP payments [Deposition of Peter Pawlisch, Exhibit 3].

On September 6, 1984, the Joint Committee on Finance met to consider the approval of the Wisconsin application for LIEAP funds. Representative Mary Lou Munts, the co-chairperson of the Joint Committee on Finance, moved to amend the LIEAP plan as follows:

> Motion: Move to modify the department's 1985 proposal by establishing an effective date of February 15, 1985, for LIEAP eligibility for residents of subsidized housing. Further, direct the department to submit a report to the Joint Committee on Finance by January 1, 1985, regarding options to achieve greater benefit equity between those LIEAP residents who reside in subsidized housing and those who do not.

This motion was adopted by a unanimous vote of the Joint Committee on Finance and acted as an amendment to the plan submitted by the state.

The effect of the action taken by the Joint Committee on Finance is that subsidized housing residents will not receive any LIEAP payments until February 15, 1985, or the date on which the Joint Committee on Finance takes action on the report submitted by the Department of Health and Social Services, whichever is earlier. [Deposition of Mary Southwick at p. 36]. Residents in nonsubsidized housing may begin to receive payments as of December, 1984 [Deposition of Mary Southwick at p. 36]. Residents in subsidized housing may have their payments reduced or eliminated, depending on the action taken by the Joint Committee on Finance, but the Department of Health and Social Services will attempt to prevent residents in subsidized housing from losing payments because funds have run out prior to February 15, 1985 [Deposition of Mary Southwick at pp. 42, 46, 52].

Financial eligibility for LIEAP payments is determined by comparing income to a percentage of the poverty level. If a

household's income is below 105% of the poverty level, it is entitled to a payment of $337.00. If its income is between 105% and 150% of the poverty level, it is entitled to a payment of $235.00. For a household of four, 105% of the poverty level is $893.00 per month and 150% of the poverty level is $1,275.00 per month. [Deposition of Peter Pawlisch, Exhibit 4].

## OPINION

### Jurisdiction

Before resolving the issues raised by the parties, I must resolve jurisdictional issues even though they are not raised by the parties. Federal Rules of Civil Procedure Rule 12(h)(3); *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir.1980). Two jurisdictional issues are present in this case: the existence of a federal cause of action and ripeness.

Plaintiffs claim that defendants violated provisions of the Low-Income Home Energy Assistance Act, 42 U.S.C. §§ 8621–8629. This act does not expressly provide for a private cause of action. Plaintiffs may still state a federal claim if they have an implied private right of action under the act or if they have a cause of action under 42 U.S.C. § 1983 against defendant state officials for deprivation of rights secured by the act. *Crawford v. Janklow*, 710 F.2d 1321, 1325 (8th Cir.1983). Plaintiffs have alleged general federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction over a claim of deprivation of civil rights under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

Plaintiffs are concerned principally with enforcement of 42 U.S.C. § 8624, which is part of a statutory plan that works as follows: A state that wishes to receive federal funds under the Act must submit an application to the Secretary of the federal Department of Health and Human Services. The application must "contain assurances by the chief executive officer of the State that the State will meet the conditions enumerated in subsection (b) of [§ 8624]." 42 U.S.C. § 8624(a)(1). 42

U.S.C. § 8624(b) requires the chief executive officer of the State to certify that the State agrees to use the funds provided to "assist eligible households to meet the costs of home energy," 42 U.S.C. § 8621(a); make payments only to households that either receive aid to families with dependent children, supplemental social security income, food stamps, or certain veterans' benefits, or have an income below 150% of the poverty level, 42 U.S.C. § 8624(b)(2); and, of crucial importance in the instant case,

provide, in a manner consistent with the efficient and timely payment of benefits, that the highest level of assistance will be furnished to those households which have the lowest incomes and the highest energy costs in relation to income, taking into account family size; ...

42 U.S.C. § 8624(b)(5). 42 U.S.C. § 8627(a)(1) provides that the Secretary of the Department of Health and Human Services shall "withhold funds from any State which does not utilize its allotment substantially in accordance with the provisions of this subchapter and the assurances such State provided under section 8624 of this title." The Act neither expressly provides for nor expressly excludes any other remedy.

In *Crawford v. Janklow*, 710 F.2d 1321, 1325–26, the court held that tenants in subsidized housing who were excluded from eligibility for payments under the Low-Income Energy Assistance Act have both an implied private right of action directly under 42 U.S.C. § 8624(b)(5) and an action under 42 U.S.C. § 1983 for deprivation of rights secured by 42 U.S.C. § 8624(b)(5). Although the tests for determining whether there is an implied private right of action under a statute and whether there is a § 1983 action to enforce rights granted by a statute are similar, *see* Comment, *Passing the Bucks: Procedural Protections Under Federal Block Grants*, 15 Harv.C. R.–C.L.L.Rev. 231, 265 (1983), I prefer to analyze the issue in terms of an action under § 1983. *Maine v. Thiboutot*, 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–2506, 65

L.Ed.2d 555 (1980), established that 42 U.S.C. § 1983 provides a cause of action to enforce rights granted by statute. In *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) the Supreme Court indicated in dictum that two factors may limit the existence of a cause of action under § 1983. First, the statute must provide substantive rights to the individuals who seek to bring an action under § 1983 to enforce the statute. The Court distinguished *Thiboutot* on the grounds that the plaintiffs in *Thiboutot* claimed that they had been denied benefits while the plaintiffs in *Pennhurst* claimed only that the State had not provided adequate "assurances" under 42 U.S.C. §§ 6011 and 6063(b)(5)(C). The Court stated, "It is at least an open question whether an individual's interest in having a State provide those 'assurances' is a 'right secured' by the laws of the United States within the meaning of § 1983." *Pennhurst State School and Hospital v. Halderman,* 451 U.S. at 28, 101 S.Ct. at 1545. Second, the Court indicated that there might be no remedy under § 1983 if the express remedy contained in the statute is exclusive. *Id.*

 In order to determine whether plaintiff has a cause of action under § 1983, a court must focus on the language and intent of the statute, as well as the nature of plaintiffs' claims. In *Pennhurst,* the Court's first concern was whether the statute's requirement that the state provide "assurances" that it would take certain actions granted the plaintiffs any substantive rights enforceable under § 1983. In the instant case, 42 U.S.C. § 8624 requires the state to provide "assurances" that are similar in form to those involved in *Pennhurst.* However, in the instant case, plaintiffs are challenging not only defendants' failure to provide adequate "assurances," but also the denial or delay of benefits. It is true that § 8624 does not give plaintiffs an absolute entitlement to those benefits. However, § 8624(b)(5) does require that states give priority to those eligible households having the greatest need. The legislative history of the Act

indicates that this priority was intended to be mandatory. *See* H.R.Conf.Rep. No. 97–208, 97th Cong. 1st Sess. 1008, *reprinted in* 1981 U.S.Code Cong. & Adm.News 396, 1370. I conclude that the priority requirement of § 8624(b)(5) grants plaintiffs a substantive right.

 The other concern expressed by the Court in *Pennhurst* was whether the express remedy granted by the statute was intended as an exclusive remedy. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. at 28, 101 S.Ct. at 1545. The fact that Congress expressly enacted a remedy may imply that it intended that remedy to be exclusive. However, the presumption is strongest where elaborate and effective enforcement procedures exist. *See Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13–15, 101 S.Ct. 2615, 2622–2623, 69 L.Ed.2d 435 (1981). The remedy provided for by 42 U.S.C. § 8627 is withholding of funds after receipt of "complaints of a substantial or serious nature" that the State has not complied with § 8624(b) and a hearing in the affected state. 42 U.S.C. § 8627(a). This procedure is by no means elaborate. Nor does it effectively protect potential beneficiaries of the Act. Withholding of any funds to the state for its failure to comply with § 8624(b)(5) would not provide any remedy to potential beneficiaries who are allegedly entitled to distribution of funds. *Crawford v. Janklow,* 710 F.2d at 1326.

The legislative history also supports the view that Congress did not intend to preclude a § 1983 remedy. In adopting the block grant approach for the energy assistance program and other programs, Congress clearly intended to free the states from most federal regulation. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. 908–09, *reprinted in* 1981 U.S.Code Cong. & Adm. News 396, 932–33. However, with respect to the home energy block grant in particular, the Senate report states,

The Committee [on Labor and Human Resources] believes that the provisions

highlighted above preserve the integrity of the block grant approach while addressing genuine concerns regarding State accountability and an equitable implementation of the proposed program. *Id.* at 910, *reprinted in* 1981 U.S.Code Cong. & Adm.News at 934. Thus, it appears that although Congress wished to cut back on federal regulation, it did not intend to leave beneficiaries without an effective enforcement mechanism.

■ Accordingly, I concur with the Court of Appeals for the Eighth Circuit in finding that there is federal question jurisdiction under 42 U.S.C. § 1983 over plaintiffs' statutory claims. *Crawford v. Janklow*, 710 F.2d at 1326. Additionally, I note that plaintiffs seek to raise an equal protection claim under the Fourteenth Amendment. In effect, plaintiffs allege that defendants either delayed eligibility for an entire class of persons, or excluded them from eligibility entirely without any rational basis for doing so. This claim is not frivolous. It raises a substantial federal question. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). There is federal question jurisdiction over plaintiffs' statutory and constitutional claims.

■ The second jurisdictional concern is ripeness. At least to the extent that the ripeness doctrine is based on the Article III requirement of a "case or controversy," *see* 13A Wright, Miller & Cooper, Federal Practice and Procedure 2d § 3532.1 (1984), ripeness is a jurisdictional issue and may be raised by the court on its own motion. *Illinois v. United States Environmental Protection Agency*, 621 F.2d 259 (7th Cir. 1980). The purpose of the ripeness doctrine is to avoid premature adjudication of issues that lack a concrete factual setting, in situations in which the potential for harm to the plaintiff is remote and uncertain. Resolution of ripeness issues requires evaluation of the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ Ripeness concerns arise in the instant case because defendants as yet have made no final determination on the eligibility of tenants in subsidized housing for LIEAP payments. Until the Joint Committee on Finance acts, it is impossible to know whether the named plaintiffs and the class they seek to represent will receive full benefits, no benefits, or benefits reduced in some way to account for the fact that their rent is subsidized. Issues such as the legality under § 8624(b)(5) of considering plaintiffs' receipt of a utility allowance in determining their eligibility, and the amount of payments they would receive are clearly not yet ripe. However, plaintiffs are suffering a present injury. Until the Joint Committee on Finance acts, or until February 15, 1985, plaintiffs cannot receive any LIEAP payments, while thousands of other residents, some of whom may be in less need than plaintiffs, would expect to begin receiving payments in December, 1984. Thus, there is a live controversy whether it is legal for defendants to delay payments to tenants in subsidized housing.

*Certification of a Class Action*

Plaintiffs have moved for an order permitting them to maintain this action as a class action on behalf of two classes: (1) persons who would otherwise have been eligible for low income energy assistance payments for the heating year 1983–84 who were either denied eligibility or discouraged from applying because they resided in federally subsidized housing; (2) all persons currently residing in federally subsidized housing who will not be eligible for low income energy assistance payments until February 15, 1985.

The requirements for maintaining an action as a class action are well·known. First, four prerequisites contained in Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied: the class must be so numerous that joinder of all members is impracticable; there must be questions of law or fact common to the class; the claims of the named plaintiffs must be typical of

those of the class; the named plaintiffs must be capable of fairly and adequately protecting the interests of the class. Second, plaintiffs' claims must fit one of three categories set forth in Rule 23(b). Plaintiffs contend that they may maintain this action under Rule 23(b)(2), which provides for a class action where plaintiffs seek declaratory or injunctive relief and the defendants have "acted or refused to act on grounds generally applicable to the class."

■ Defendants first challenge the 1983–84 class on the grounds that the relief sought is retroactive relief barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hospital v. Halderman*, — U.S. —, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). As plaintiffs point out, the Eleventh Amendment issues are not properly before the court at this time. Since plaintiffs have not moved for relief with respect to the 1983–84 proposed class, and since plaintiffs' claims with regard to the 1983–84 season may be subject to dismissal on a motion for summary judgment, consideration of certification of the 1983–84 class can be deferred.

Defendants do not dispute that the numerosity requirement of Rule 23(a)(1) is satisfied. The class numbers 6,300 or more households. That is easily enough to meet the numerosity requirement of Rule 23(a)(1). Defendants suggest that depending on the outcome of the decision by the Joint Committee on Finance there may be conflicts of interest within the class. Defendants also contend that the named plaintiffs' claims are not typical because not all residents in subsidized housing will have energy burdens or energy burdens similar to those of the named plaintiffs.

■ Defendants' typicality argument carries little weight. Of course plaintiffs' claims are not identical to those of other class members, but identity of claims is not required. All members of the class are affected in the same way by the delay in eligibility for payments. The relief plaintiffs now seek would affect all of the class

in the same way. And plaintiffs' claims are typical of those of the class in that they live in different categories of Section 8 subsidized housing. *See Crawford v. Janklow*, 557 F.Supp. 1146, 1147 (S.D. 1983), *aff'd* 710 F.2d 1321 (8th Cir.1983).

Defendants' argument concerning potential conflicts of interest within the class is more substantial. The actions of the Joint Committee on Finance could create diverse interests within the class, which might lead to a situation in which the named plaintiffs are not adequate representatives of the class. *See* 7 Wright & Miller, Federal Practice and Procedure § 1768 (1972). However, conflicts of interest can frequently be cured by dividing the class into subclasses or taking other appropriate action. *Id.* at §§ 1765, 1768. In the instant case, there is no reason to deny class certification now because of such potential conflicts of interest, especially because the relief plaintiffs seek at the present time would harm no members of the class and potentially benefit all class members. Potential conflicts can be dealt with under Rules 23(c)(1) and (4). Plaintiffs are represented by Western Wisconsin Legal Services, Inc., and have demonstrated that they will adequately protect class interests. I find that the prerequisites of Rule 23(a) have been met.

■ Defendants' denial of any payments until February 15, 1985, is applicable to all class members. Injunctive or declaratory relief would affect all class members equally. Therefore, this action is maintainable as a Rule 23(b)(2) class action.

*Preliminary Injunction*

In *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984), the Court of Appeals for the Seventh Circuit set out in detail the requirements for obtaining a preliminary injunction. Although *Roland Machinery* concerned an antitrust suit, much of the court's analysis is generally applicable to this case. The first requirement is that the plaintiffs show both that they have "no adequate remedy

at law," and that they will suffer "irreparable harm" if the injunction is not granted. *Id.*, at 386. In the instant case, which is an action for injunctive and declaratory relief, it is not difficult to find the absence of an adequate remedy at law. As defendants point out, retroactive relief in the form of damages may be unavailable to plaintiffs under the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347. Moreover, even if damages were available at some later date, they would not be an adequate remedy to plaintiffs for the loss of funds which would be provided to them to help them pay for the necessities of life and which they are presumably entitled to receive now.

■ The issue of irreparable harm is more difficult. It is indisputable that plaintiffs are suffering a present harm. While residents in non-subsidized housing (some of whom may have less need than those in the plaintiff class) are entitled to receive payments now, plaintiffs must wait until the Joint Committee on Finance acts. On the present record, it is difficult to tell whether that harm is irreparable. If plaintiffs are forced to go without heat or other necessities because they have to wait to receive payments, they may suffer irreparable harm. On the other hand, plaintiffs may suffer only a severe but temporary inconvenience if they receive full payments at a later date, particularly if they are protected by a moratorium of energy cutoffs so that they may delay the payment of their energy bills until they receive LIEAP payments, without losing their heat. Plaintiffs have failed to meet their burden of introducing evidence from which I could conclude that they will suffer irreparable harm solely by virtue of a delay in receipt of LIEAP payments.

Plaintiffs also suggest that they may suffer irreparable harm from the delay in receipt of payments because the payments may be reduced or eliminated either because the program runs out of funds in the interim or because action taken by the Joint Committee on Finance is prejudicial to their interests. The deposition testimony of Mary Southwick, Director of the Bureau of Economic Assistance of the Department of Health and Social Services, indicates that these are real possibilities. Southwick testified that the department would attempt to ensure that residents of subsidized housing would not lose their payments because funds run out prior to disbursement to members of the plaintiff class, but Southwick is unable to estimate the number of eligible tenants of subsidized housing with precision [Deposition of Mary Southwick, at pp. 23–24, 42, 46]. Since the department cannot be sure how many subsidized housing residents will be eligible for how much of a fixed sum of money, and since it cannot recall payments already made to non-residents of subsidized housing, the department cannot ensure that members of the plaintiff class will not receive reduced payments or none at all simply because their eligibility for payments was delayed. Moreover, the Joint Committee on Finance retains the authority to reduce or eliminate benefits for subsidized housing residents. [Deposition of Mary Southwick, pp. 6–7, 52].

Reduction or elimination of plaintiffs' benefits because of the delay in eligibility would be irreparable. The Court of Appeals for the Seventh Circuit has defined irreparable harm as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Machinery Co. v. Dresser Industries, Inc.*, at 386. As pointed out earlier, it is likely that the Eleventh Amendment will preclude plaintiffs from obtaining retroactive relief. Once the money is spent, plaintiffs will have no remedy to enforce their rights. It may be argued that the harm to plaintiffs is speculative and that plaintiffs cannot demonstrate that they will actually suffer irreparable harm. Although it is true that plaintiffs have not shown the certainty of irreparable harm, they are required only to show "the threat of irreparable harm for which there is no adequate remedy at law." *American Can Co. v. Mansukhani*, 742 F.2d 314, 325 (7th Cir.1984). Moreover, plaintiffs cannot be forced to wait until the harm is a certainty only to find that their

claims are barred by the Eleventh Amendment. I find that plaintiffs have met the first test by their showing of a significant or substantial threat of irreparable harm.

The next requirement is to weigh the irreparable harm to plaintiff "against any irreparable harm that the defendant can show he will suffer if the injunction is granted." *Roland Machinery Co. v. Dresser Industries, Inc.*, at 387. Defendants have not argued that they will suffer irreparable harm if a preliminary injunction is issued. I find that the threatened injury to the plaintiffs outweighs any harm that might be inflicted on defendants. *American Can Co. v. Mansukhani*, 742 F.2d at 325.

The next factor to be considered is plaintiffs' likelihood of success on the merits. At a minimum, plaintiffs must show "some likelihood of success on the merits"; the degree of likelihood of success which the plaintiff must show depends on or is interdependent with the balance of relative harms: "[t]he more likely plaintiff is to win, the less heavily need the balance of harms weight in his favor; the less likely he is to win, the more need it weight in his favor." *Roland Machinery Co. v. Dresser Industries, Inc.*, at 387. The only cases dealing with denial of eligibility for payments under the Low-Income Home Energy Assistance Act on the basis of receipt of federal housing subsidies are decidedly in plaintiffs' favor. *Crawford v. Janklow*, 557 F.Supp. 1146; *Clifford v. Janklow*, 733 F.2d 534 (8th Cir.1984).

Two separate issues are raised in *Crawford, Clifford,* and the instant case. The first is the legality of a complete exclusion (or delay) in payments to persons in subsidized housing. I find that plaintiffs' likelihood of success on this claim is high. 42 U.S.C. § 8624(b)(5) requires that states give priority for payments under the Act to those persons with the greatest need. Exclusion of subsidized housing tenants violates § 8624(b)(5) because families with the same or greater need will be denied payments simply because they live in subsidized housing. *Crawford v. Janklow,* 710 F.2d at 1327.

Moreover, exclusion of subsidized housing residents violates the equal protection clause of the Fourteenth Amendment because there is no rational basis for such an exclusion. *Crawford v. Janklow,* 557 F.Supp. at 1151. By electing to participate in the program established by the Act, the state has acknowledged that it has an interest in providing energy assistance to those of its residents who have the greatest need. Defendants have not shown any rational basis for excluding all persons in subsidized housing. As the facts show, those tenants may have needs as great or greater than persons living in non-subsidized housing. Exclusion of these persons has no rational connection to any apparent legitimate state interest. It may promote administrative convenience and reduce costs, but only to the same extent as a patently irrational measure such as the exclusion of every fourth applicant. The fact that in the instant case plaintiffs have not (at least not yet) been completely excluded from eligibility but have had their eligibility delayed does not alter the fact that they have been singled out for disparate treatment without any rational connection to a legitimate state interest.

Defendants contend that plaintiffs have failed to show that they have a greater need than residents of non-subsidized housing. However, plaintiffs have shown that they have a greater need than some residents of non-subsidized housing who are currently eligible to receive LIEAP payments. Financial eligibility under Wisconsin's LIEAP plan is dependent solely on income: households with an income of 105% or less of the poverty level are to receive $337, while households with an income of 105% to 150% of the poverty level receive $235. Plaintiff Boles lives in a household with four members and has income of $594.00 per month. She receives a total rent subsidy (including her utility allowance) of $121.00 per month. 105% of the poverty level for a household of four in Wisconsin is $893.00 per month. Even if

her entire rent subsidy were considered income, plaintiff Boles's income would still be well under 105% of the poverty level. Yet she cannot now receive payments, while households of four who do not live in subsidized housing can receive payments if their income is under $1,275.00 per month. Plaintiff Boles has shown that she has a greater need than others who are now eligible to receive payments. Moreover, it is likely that defendants' failure to consider whether the needs of members of the plaintiff class are greater than those of non-members violates both § 8624(b)(5) and the equal protection clause.

Plaintiffs' second claim is that it would violate the Act and the equal protection clause to consider their receipt of a utility allowance and rent subsidies as income in determining their eligibility for LIEAP payments. As I have indicated, this claim is not yet ripe for review. Moreover, this claim is more problematic on its merits. Plaintiffs were successful on a similar claim in *Clifford v. Janklow*, 733 F.2d 534. However, it is much more difficult for a court to decide what factors a state may legitimately consider under § 8624(b)(5) than to decide whether a state may exclude an entire class of otherwise eligible residents. At the end of § 8624(b) Congress explicitly stated, "The Secretary may not prescribe the manner in which the States will comply with the provisions of this subsection." By the same token, the federal courts should be wary of offering detailed instructions to the states on how to administer a program Congress intended to be largely, but not totally, discretionary. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. 908–911, *reprinted in* 1981 U.S.Code Cong. & Adm.News 932–35. In order to have a reasonable chance for success on the merits of this claim, plaintiffs would be required at least to present detailed evidence concerning the effect of including the utility allowance or rent subsidy as income for subsidized housing tenants.

The final element of the *Roland Machinery* test requires that the public interest be considered in cases where the decision on a preliminary injunction motion will have consequences beyond the immediate parties." *Roland Machinery Co. v. Dresser Industries, Inc.*, at 388. Defendants contend that the public interest will be harmed if they are ordered to pay benefits to plaintiffs before defendants' study has been completed and the Joint Committee on Finance has acted. However, I have found it likely that defendants' delay in considering whether to make payments to plaintiffs violates § 8624(b)(5) and the equal protection clause. That being the case, neither the defendants' nor the public's interest would be enhanced by permitting defendants to continue to violate federal law. The fact that defendants have inconsistent state law obligations is of little relevance, since their obligations under federal law are controlling. *See King v. Smith*, 392 U.S. 309, 333, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118 (1968).

Accordingly, I find that plaintiffs have met their burden and are entitled to a preliminary injunction. However, determining what relief to grant is not an easy task. Membership in the plaintiff class does not entitle plaintiffs to the payment of benefits, but it does entitle them to consideration of their applications for benefits now. Nevertheless, defendants have considerable discretion in deciding which residents are entitled to payments and the size of the payments to which they are entitled. Plaintiffs' claim that defendants may not consider the utility allowance and rent subsidies plaintiffs receive in setting the amounts of payments to subsidized housing tenants is not yet ripe. Therefore, I will order defendants to give immediate consideration to plaintiffs' applications, but I will not prescribe either the amount of payments or the factors defendants are required to consider.[1]

---

1. Plaintiffs have submitted a supplemental memorandum containing a copy of the report prepared by the Department of Health and Social Services in accordance with the instructions of the Joint Committee on Finance. Plaintiffs contend that in the report defendants confess judgment with regard to the legality of plans that would consider the utility allowance re-

## ORDER

IT IS ORDERED that plaintiffs' motion to certify this action as a class action is GRANTED in part. Plaintiffs may maintain their claims regarding the 1984–85 heating year on behalf of a class consisting of all Wisconsin residents currently residing in federally subsidized housing, either publicly or privately owned, who will not be eligible for low income energy assistance plan payments until February 15, 1985. Leave to maintain this action as a class action is granted on a conditional basis, and may be altered or amended at a later time.

IT IS FURTHER ORDERED that defendants are preliminarily enjoined from denying or delaying low income energy assistance plan payments to plaintiffs solely on the basis of their membership in the plaintiff class. Defendants shall file with the clerk of court within seven (7) days of the date of this order a report setting forth the manner in which they are complying with the order and the special considerations, if any, which they are using in determining the eligibility for payments and the amount of payments granted to members of the plaintiff class. Plaintiffs may make timely written objections and may renew their motion for a preliminary injunction with respect to the administration of the low income energy assistance program.

In all other respects, plaintiffs' motion to certify this action as a class action and motion for a preliminary injunction are DENIED.

ceived by subsidized housing tenants in determining payment levels. Plaintiffs urge the court to order defendants to adopt Alternative 2, Option A, as set out in the report. Under this option, subsidized housing tenants would receive the same payments as other income eligible persons.

Plaintiffs' contentions must be rejected. In discussing the fact that the Court of Appeals for the Eighth Circuit has struck down similar plans, defendants do not confess judgment, since that court's decisions are not controlling here. Moreover, as I have indicated, the legality of a plan that the State of Wisconsin may adopt at some time in the future is not a ripe issue. I will not issue an advisory opinion on the legality of such plans, nor will I direct defendants to exercise their discretion in a particular manner.