Balbina **RODRIGUEZ**, et al., **Plaintiffs,**

v.

Mario **CUOMO**, et al., **Defendants.**

No. 89 Civ. 8541(VLB).

United States District Court,
S.D. New York.

Oct. 11, 1990.

Order Nov. 9, 1990.

Michael D. Hamden (John T. Hand, of counsel), Westchester Legal Services, Inc., Yonkers, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., Judy E. Nathan, Asst. U.S. Atty., New York City, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

At issue in this action is whether the State of New York's program for distributing federal funds through its Home Energy Assistance Program ("HEAP")[1] violates the federal Low–Income Home Energy Assistance Act, 42 U.S.C. §§ 8621–8629 ("LI-HEAA"). At the oral argument on this matter on September 28, 1990 I found that it did.[2] This memorandum order supplements the reasons given on the record for that determination.

Plaintiffs are subsidized housing tenants whose heating costs are included in and paid as a part of their rent, but who make separate payments for gas and electric utilities.[3] Under the New York State regula-

---

1. *See* Part 393 of Title 18 of the *Official Compilation of Codes, Rules, and Regulations of the State of New York* ("N.Y.C.R.R.").

2. In my oral decision last September 28 I indicated that I would issue this memorandum order, and I enjoined the defendants in their institutional capacities from spending, transferring, reducing, or encumbering in any way HEAP funds that remained for the 1989–90 fiscal year which was to end on September 30.

3. On March 13, 1990 I "so ordered" a stipulation by the parties, by the terms of which a final decision in this action is to be made "applicable

to all persons denied HEAP [benefits] for the 1989–90 program year because they reside in government subsidized housing and pay separately for utilities but not for heat...."

Although households whose rent bill includes both heat and utilities are not parties to this action, the reasoning and conclusions in this memorandum order would equally apply to the eligibility of these households. State regulations excluded such households from receiving any HEAP payments even before the amendments to the N.Y.C.R.R. that triggered the present litigation became effective.

tions in effect prior to the 1988–89 heating season, plaintiffs qualified for HEAP payments. The State amended its regulations effective May 26, 1989; under the amended regulations plaintiffs were excluded from receiving HEAP moneys. The challenged portion of the state regulation, as amended, reads:

393.4 Eligibility

. . . .

(c)

. . . .

(3) For purposes of the current HEAP State Plan ... households in the following living arrangements shall be ineligible to receive benefits under HEAP:

(i) tenants of government subsidized housing with heat included in their rent....

18 N.Y.C.R.R. § 393.4(c)(3)(i).

An earlier dispute regarding payments for the 1988–89 season was settled. At stake in this action is whether plaintiffs should be eligible to receive benefits with respect to the 1989–90 heating season.

Plaintiffs have claimed that the amended regulation violates both the federal LIHEAA and the due process and equal protection clauses of the fourteenth amendment to the United States Constitution.[4] Because I find that the regulation in question violates the LIHEAA, I do not reach the constitutional claims.

## I.

### *Eligibility Under the Federal Statute*

The relevant part of the Low–Income Home Energy Assistance Act as to eligibility reads as follows:

[T]he chief executive officer of each State shall certify that the State agrees to—

. . . .

(2) make payments under this subchapter only with respect to—

. . . .

(B) households with incomes which do not exceed the greater of—

(i) an amount equal to 150 percent of the poverty level for such State; or

(ii) an amount equal to 60 percent of the State median income.

except that no household may be excluded from eligibility under this subclause for payments under this subchapter ... if the household has an income which is less than 110 percent of the poverty level for such State....

42 U.S.C.A. § 8624(b) (West Supp.1990)

Thus under the federal statutory scheme, households whose income exceeds 150% of the poverty level for the State are effectively barred from receiving HEAP funds, and households whose income is less than 110% of the poverty level for the State must be eligible. Consequently, the State has some leeway in defining which households will be eligible to receive HEAP funds; it may not, however, draw the eligibility line above the 150% poverty level figure or below the 110% poverty level figure.

The State points out that a low household income is only one of the requirements for eligibility to HEAP payments. On this accurate premise, the State builds its flawed argument that persons who reside in government housing where heat costs are included in their rent, and whose total payment for both rent and heat is strictly a function of their income, do not qualify for HEAP payments because they do not make payments toward heat, nor are they are vulnerable to increased heat costs. The State's arguments are not persuasive: whereas making payments toward heat is a legitimate prerequisite, the plaintiffs in this action all meet that requirement; and while increased heating costs might validly be taken into consideration in awarding emergency HEAP payments, immunity to increased costs (and I am not persuaded that the plaintiffs are so immune) is not a valid basis for exclusion from regular HEAP payments.

*Boles v. Earl,* 601 F.Supp. 737, 742–44 (W.D.Wis. 1985).

---

**4.** Plaintiffs may enforce the provisions of the LIHEAA in this court. *See Crawford v. Janklow,* 710 F.2d 1321, 1324–26 (8th Cir.1983);

To qualify for any part of the federal funds distributed to the states under the LIHEAA, an applicant family must be making payments for heat. The term "household" for LIHEAA purposes means "any individual or group of individuals who are living together as one economic unit for whom residential energy is customarily purchased in common or *who make undesignated payments for energy in the form of rent*";[5] thus to qualify for LIHEAA funds a "household" must pay for energy,[6] either directly to the company that supplies heat to its dwelling, or through "undesignated payments for energy in the form of rent." Plaintiffs directly spend between 13 and 27 percent of their income to pay for combined charges of rent and heat,[7] with the heat component undesignated. Although payment for heat is "undesignated" and "in the form of rent," this form of payment is sufficient to constitute each plaintiff in this action a "household" under the LIHEAA.

The State contends that plaintiffs cannot complain about the challenged State regulation because they are not economically at risk for rising costs of home energy. The LIHEAA does not, however, require households to demonstrate vulnerability to increased payments for heat. Under the statutory scheme, the federal government makes LIHEAA grants to the states "to assist eligible households to meet the costs of home energy."[8] Since the plaintiffs are both "eligible" and "households," the plaintiffs are among the intended recipients of LIHEAA funds.

## II.

### *Violation of 42 U.S.C. § 8624(b)(8)*

42 U.S.C. § 8624(b)(2)(B) focuses only on who may be "eligible," and eligibility does not necessarily mean automatic entitlement to HEAP payments. Under § 8624(b)(8), however, the State must agree to "provide assurances that (A) the State *will not exclude* households described in clause (2)(B) of this subsection *from receiving* home energy assistance benefits under clause (2)...."[9] This must mean that, absent some other overriding clause, every household described in 42 U.S.C. § 8624(b)(2)(B) must receive some part of the federal funds that have been earmarked to help pay heating and cooling costs. So long as these low-income households are themselves paying, directly or indirectly, for some part of their heating costs, they are entitled to share in the federal funds that have been granted to the state for precisely this purpose.

The State appears to find an overriding clause in 42 U.S.C. § 8624(b)(5), which requires that "the highest level of assistance ... be furnished to those households which

**5.** 42 U.S.C.A. § 8622(2) (West 1983) (emphasis added).

**6.** Although plaintiffs seem to imply that "home energy" may include domestic utilities such as gas and electricity, the statute states that "[t]he term 'home energy' means a source of heating or cooling in residential dwellings." 42 U.S.C.A. § 8622(3) (West 1983). While the term "home energy" is defined in the LIHEAA statute and the term "residential energy" as used in 42 U.S.C. § 8622(2), *supra*, is not, the context indicates that the terms are interchangeable.

**7.** Although the State asserts that a tenant's unsubsidized rent contribution is limited to 30% of the tenant's adjusted income, some tenants in all probability pay more. Under the Low–Income Housing Assistance "voucher" program, "the monthly assistance payment for any family shall be the amount by which the *payment standard for the area* exceeds 30 per centum of the family's monthly adjusted income...." (em-

phasis added) 42 U.S.C.A. § 1437f(*o*)(2) (West Supp.1990). The "payment standard" is a rent amount that normally would be sufficient to cover costs of adequate housing. *See* 24 C.F.R. § 887.251 (1990) (setting forth the minimum requirements for habitability standards). But some tenants actually might not live in such inexpensive apartments. Since the amount of subsidy is capped at the amount by which the "payment standard" exceeds 30% of the family's "monthly adjusted income," any housing costs over and above the "payment standard" must be paid by the tenant in addition to the 30% portion. *See also* 24 C.F.R. § 887.353(a)(3) (1990) ("If a unit rents for more than the payment standard ... the family pays the entire difference between the rent and the housing assistance payment.").

**8.** 42 U.S.C.A. § 8621(a) (West 1983).

**9.** 42 U.S.C.A. § 8624(b)(8) (West Supp.1990) (emphasis added).

have the lowest incomes and the highest energy costs in relation to income, taking into account family size." [10] Without passing on whether the State program correctly applies the requirements of this clause, for purposes of this memorandum order it is sufficient to point out that § 8624(b)(5), in indicating who should receive "the highest level of assistance," simply addresses how the federal funds should be distributed among those receiving aid. The clause focuses upon the proportion of funds going to each of the recipients. It does not deal with who should be disqualified from being a recipient, and it does not nullify § 8624(b)(8).

### III.

#### *Violation of 42 U.S.C. § 8624(f)(1)*

The State has excluded plaintiffs from its HEAP program because plaintiffs receive certain housing subsidies. Excluding plaintiffs on this basis indirectly violates the mandate of § 8624(f)(1) of the LIHEAA, which provides as follows:

Notwithstanding any other provision of law unless enacted in express limitation of this paragraph, the amount of any home energy assistance payments or allowance provided directly to, or indirectly for the benefit of, an eligible household under this subchapter shall not be considered income or resources of such household (or any member thereof) for any purpose under any Federal or State law, including any law relating to taxation, food stamps, public assistance, or welfare programs.

42 U.S.C.A. § 8624(f)(1) (West Supp. 1990).

The Eighth Circuit in *Clifford v. Janklow* [11] has already addressed this issue, concluding that LIHEAA funds cannot be withheld from eligible households on the basis of the receipt by those households of other forms of public assistance:

[Section 8624(f)] clearly prohibits the states from reducing a household's entitlement to other forms of public assistance based on its receipt of LIHEAA funds (citation omitted). The question presented here is whether the provision also evinces Congress's intent to prevent the states from achieving the same net effect by the opposite method, that is, reducing the LIHEAA grant based on the applicant's receipt of other forms of public assistance.

. . . .

... We see no logical reason why it should be permissible for a state to achieve a net effect contrary to Congress's intent merely by subtracting from one side of an equation instead of the other. [12]

I agree with the *Clifford* court. In apportioning HEAP funds among the various recipients, it is a corollary to § 8624(f)(1) that the State may not take into consideration the rent subsidies received by the applicants. By excluding the plaintiffs from receiving HEAP funds based on their receiving rent subsidies, the State is in violation of Section 8624(f)(1) of the LIHEAA. [13]

### IV.

#### *Remedial Payments*

The State argues that it is too late to make payments for the 1989–90 heating season because such payments would be retroactive and compensatory, which would be inconsistent with the remedial purpose of the HEAP statute. [14] Nevertheless, precisely because the plaintiffs pay for heating as a component of their rent payments,

10. 42 U.S.C.A. § 8624(b)(5) (West Supp.1990).

11. 733 F.2d 534 (8th Cir.1984).

12. *Id.* at 537–38.

13. Non–HEAP assistance provided by the State or the federal government for heat costs may affect the eligibility of an applicant for HEAP funds, insofar as such non-HEAP assistance may result in the applicant not paying for any heat at all, not even "in the form of rent." If this extreme situation occurs, the applicant would no longer be a "household" under the statute and would not be entitled to any HEAP payments.

14. In support of this position the State cites *Mitchell v. Perales,* 88 Civ. 382 (N.D.N.Y. December 16, 1988).

which remain constant throughout the year, plaintiffs are paying for heat every month as part of their rent, irrespective of their actual usage of heat. Thus HEAP payments made now would assist plaintiffs with their ongoing heating costs.

### V.

New York State regulations, specifically 18 N.Y.C.R.R. 393.4(c)(3)(i), by categorically excluding plaintiffs from consideration for receipt of funds provided to the State under the federal LIHEAA, directly violate the requirements of 42 U.S.C. § 8624(b)(8) and indirectly violate 42 U.S.C. § 8624(f)(1). The State is directed to conform its regulations to federal law. The State of New York is also directed to pay to plaintiffs those HEAP benefits for the 1989–90 season to which they are entitled. Plaintiffs' counsel will submit, on three days' notice, a proposed order which will implement the determinations contained herein. Until such an order is issued the injunction of September 28, 1990 remains in full force and effect.

SO ORDERED.

### ORDER

Plaintiffs having brought this action seeking declaratory and injunctive relief and restoration of Home Energy Assistance Program ("HEAP") benefits under the Low–Income Home Energy Assistance Program, 42 U.S.C. §§ 8621–8629 ("LI-HEAA"), and plaintiffs having challenged defendants' rules and regulations which deny benefits under said program to subsidized housing tenants whose heating costs are included in and paid as a part of their rent, and this Court having considered all of the papers filed in support of and in opposition to plaintiffs' claims, and having heard oral argument thereon, and the parties having agreed that a final decision in this action shall be applicable to all persons denied HEAP benefits for the 1989–1990 HEAP program year who qualify as "households" under 42 U.S.C. § 8622(2) and who reside in government subsidized housing and whose rent includes the cost of heat but not the cost of utilities ("sim-ilarly situated persons"), and the parties having agreed to submit this action for judgment on the merits, and after due deliberation this Court having rendered a memorandum order ruling that plaintiffs are entitled to a judgment as a matter of law, it is hereby ORDERED, ADJUDGED AND DECREED that:

1. Defendants' regulation Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R.") Sec. 393.4(c)(3)(i) violates 42 U.S.C. §§ 8624(b)(8) and (f)(1) by excluding from HEAP benefits plaintiffs and other residents of government subsidized housing whose rent includes the cost of heat but not the cost of utilities;

2. Defendants, their agents, employees, successors and all others in active concert and participation with them are permanently enjoined and restrained from implementing and enforcing the provisions of 18 N.Y. C.R.R. § 393.4(c)(3)(i) and from taking into consideration the rent subsidies received by plaintiffs and other similarly situated persons in the apportionment of the State's HEAP funds;

3. By January 31, 1991 defendants shall have reviewed or caused to be reviewed the 1989–1990 HEAP applications of plaintiffs and all other similarly situated persons and shall have re-determined their eligibility for HEAP benefits for the 1989–1990 HEAP season;

4. In all cases where the eligibility documents appear to suggest that a plaintiff or similarly situated person is otherwise ineligible for a HEAP benefit, but more information or clarification of information is needed to make such determination, defendants shall make reasonable efforts to contact the person and to elicit such information or clarification, which shall include written notice of the opportunity to provide the specified information within fourteen (14) days of the mailing of such notice;

5. No later than January 31, 1991 defendants shall mail a notice of ineligibility to each person determined to be ineligible for payment of 1989–1990 HEAP benefits pursuant to the provisions of this order, except as to those persons from whom

more information was requested, and as to the latter persons, the notice of ineligibility shall be sent within thirty (30) days of the request for additional information; and in either case such notice shall include the reason(s) for the determination of ineligibility and the manner and time in which the person may request a fair hearing to challenge the determination;

6. If plaintiffs and other similarly situated persons receive prorated benefits, by March 1, 1991 defendants shall provide in writing to plaintiffs' counsel the calculations used to determine the exact dollar amount of payments pursuant to this order for households in each of the four regions and two income tiers;

7. By April 30, 1991 defendants shall have paid to plaintiffs and to all other similarly situated persons whose applications for the 1989–1990 HEAP season were denied and who are not redetermined ineligible, the lesser of:

A. The amounts of 1989–1990 regular HEAP payments set forth in the tables of payments for Tier I and Tier II Income on page 63 of defendants' HEAP manual, dated October 1, 1989, for Households with Heat Included in Rent and Subsidized Housing Tenants Who Pay Directly for Heat, as follows, for Tier I: for Heating Region I—$180.00, for Heating Region II—$175.00, for Heating Region III—$195.00, and for Heating Region IV—$190.00; and for Tier II: for Heating Regions I and II—$110.00, and for Heating Regions III and IV—$120.00; or

B. The amounts stated in paragraph A prorated on the basis of the total funds remaining from the 1989–1990 HEAP fiscal year;

8. By July 31, 1991 defendants shall submit to the Court and to counsel for plaintiffs a final report listing the following: the total number of 1989–1990 HEAP applications which were denied by each local agency; the total number of 1989–1990 applications originally denied because the applicant, although paying separately for utilities, was a tenant of subsidized housing; the total number of cases reviewed hereunder and determined to be eligible; the total number of cases reviewed hereunder and determined to be ineligible; a break-out of reasons for determinations of ineligibility; and the total amount of HEAP benefits paid pursuant to this order to plaintiffs and other similarly situated persons for the 1989–1990 HEAP fiscal year;

9. This Court will retain jurisdiction of this action until October 1, 1991 for purposes of enforcement, and plaintiffs' attorneys may apply to the Court for an award of attorney's fees within sixty (60) days from said date or from the date of entry of the final order after any appeal herein, whichever is later.